1 | Linda Deos (SBN: 179170)
Law Office of Linda Deos
2 | 770 L Street, Suite 950
Sacramento, CA 95814
3 | (916) 442-4442
(916) 583-7693 (Fax)
4 | Deoslawyer@gmail.com

5 | John B. Keating (SBN:148729)
2995 Woodside Road, Suite 350
6 | Post Office Box 620622
Woodside, California 94062
7 | Telephone: (650) 851-5900
Facsimile: (650) 851-5912
8 |

9 | Attorneys for Plaintiff

10 |

11 | UNITED STATES DISTRICT COURT

12 | EASTERN DISTRICT OF CALIFORNIA

13 |

14 | ROBERT JAMES ANTHONY, individually,      Case No.
and on behalf of the general public,
15 |                                                                       COMPLAINT FOR DAMAGES AND
                                                                          INJUNCTION RELIEF
16 |                                        Plaintiff.

17 | vs.

18 | EQUIFAX INFORMATION SERVICES,
LLC., & TRANS UNION LLC,
19 |
                                         Defendants.
20 |

21 |         Plaintiff, Robert James Anthony, individually, and on behalf of the general public, hereby

22 | generally complains that Defendants, Equifax Information Services, LLC, and Trans Union LLC

23 | damaged him by a known wrongful practice of repeated false credit reporting, and more

24 | specifically-alleges as follows:

25 |

26 |                          **JURISDICTION AND VENUE**

27 |         1.      Mr. Robert James Anthony (herinafter "Plaintiff") brings this action for actual,

28 | statutory and punitive damages, injunctive relief, costs and attorney's fees brought pursuant to 15

U.S.C. section 1681 *et seq.*(Federal Fair Credit Reporting Act ("FCRA"), and state law obligations

brought as supplemental claims, including pursuant to California Civil Code section 1785 *et seq* (California Consumer Credit Reporting Agencies Act ("CCCRAA")).

2.     The jurisdiction of this Court is conferred by 15 U.S.C. Section 1681(p) and 28 U.S.C. § 1367.  Venue lies in the Eastern District of California as Plaintiff's claims arose from acts of the defendants perpetuated therein.

3.     Plaintiff is a natural person and is a resident and citizen of South Lake Tahoe, El Dorado County, the State of California and of the United States.  Plaintiff is a "consumer" as defined by sections1681a(c) of the FCRA and California Civil Code section 1785.3(b).

4.     Equifax Information Services, LLC (hereinafter "Equifax") is a Georgia corporation, duly authorized and qualified to do business in the State of California.

5.     Equifax is a "consumer reporting agency" within the meaning of the FCRA [15 U.S.C. § 1681a(f)] and California Civil Code section 1785.3(d). Equifax is required to comply with the FCRA and CCCRAA. Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) and California Civil Code section 1785.3(c) to third parties.

6.     Equifax disburses such consumer reports to third parties under contract for monetary compensation.

7.     Trans Union LLC (hereinafter "Trans Union") is a Delaware corporation, duly licensed, qualified to do business in the State of California.

8.     Trans Union is a "consumer reporting agency" within the meaning of the FCRA [15 U.S.C. § 1681a(f)] and California Civil Code section 1785.3(d).  Trans Union is required to comply with the FCRA. Upon information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the

purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) and California Civil Code section 1785.3(c) to third parties.

9.      Trans Union disburses such consumer reports to third parties under contract for monetary compensation.

## FACTUAL ALLEGATIONS

10.      Plaintiff's full name is Robert James Anthony. He has never been known by any other name.  He was born in Ohio in 1939. He moved out to California after graduating from North Carolina State in 1962 on a football scholarship. He found employment at Harrah's Casino in South Lake Tahoe, CA as a dealer and retired in 2004 after 35 years of continuous employment. Plaintiff has lived at the same address in South Lake Tahoe since 1969.

11.      Plaintiff takes great pride in his good name and credit record. For his entire life he worked very hard to ensure that his bills were paid in full and on time every month.  Plaintiff believes and understands that his credit rating with all of his creditors is excellent.

12.      Plaintiff has a son named Robert John Anthony. His son was born in 1964 and currently lives in the Sacramento area. Plaintiff does not live with his son. His son is self employed by Rob's Auto. Plaintiff has never worked for his son. His son has a different social security number than his father.

13.      His son, Robert John Anthony, has a very bad credit history.  On or about March 13, 2012, his son filed for Chapter 7 bankruptcy protection in the Eastern District of California. Soon after his son's bankruptcy filing, Plaintiff received notice from Capital One, GM Card Mastercard, #5466, that it was lowering his credit limit from $5,000.00 to $305.00. He was informed that the reduction in credit was due to his poor credit history. Plaintiff then learned that Chase had closed his North Carolina State Mastercard, #5439, due to his poor credit history. He had had this account for close to 20 years with a credit limit of $20,900.00. Then, Citibank closed

3

its account with him, after first lowering his credit limit from $8,500.00 to $1,000.00. He had had the Citibank account since 1974.

14.     Because he had always paid his bills on time and had excellent credit, Plaintiff did not understand why these companies said he had a poor credit history.  In an attempt to understand what was being reported on his credit reports, on or about May 17, 2012, Plaintiff requested a copy of his credit report from Experian Information Solutions, Inc. This was the first time he learned that his credit report contained credit accounts that did not belong to him. These credit accounts reported several late payments, charge offs and accounts sent to collections.  He later learned that they were his son's accounts.

15.     Beginning in May 2012 he started writing to the credit card companies to tell them that those accounts were not his. While some accounts eventually were deleted from his credit reports as a result of his letters to the credit card companies, other credit card companies failed to remove accounts that belong to his son.

16.     In August 2012 he was denied credit by Citibank and USAA. Both companies told him he was denied credit because of information received from Equifax.  On or about September 10, 2012, Plaintiff wrote to Annual Credit Report and requested his free annual credit report. He enclosed a copy of his CA driver's license and a copy of his social security card.

17.     In September 2012 he received credit reports from both Defendants. Equifax's September 18, 2012 Credit Report included his son's prior addresses, his son's current address and the following accounts which are not Plaintiff's: Advanta, #5477, American Express, #3499, American Express, #0548, Bank of America, #4170, Bank of America, #5474, Bank of America, #4888-9792, Bank of America, # 4888-0146, Bank of America #5490, Bank of America, # 7497, Bank of America, #6824-33, Bank of America, #6824-58, Capital One, #4802, Chase Bank USA, NA #5401,and Discover, #6011.

18.     Trans Union's September 18, 2012 Credit Report also contained Plaintiff's son's addresses, listed Rob's Auto as one of Plaintiff's employers, and the following accounts which are not Plaintiff's: Advanta, #5477, American Express, #3499, Bank of America, #4170, Bank of America, #5474, Bank of America, #4888-9792, Bank of America #5490, Bank of America, #6824-33, Bank of America, #6824-58, Bank of America, #5005, and Discover, #6011.

19.     In October 2012 he wrote to both Equifax and Trans Union. He informed Equifax that he disputed fourteen (14) separate accounts that did not belong to him. He also informed Equifax that they had incorrect addresses for him. He informed Trans Union that he disputed ten (10) separate accounts which did not belong to him.  He also informed Trans Union that they had incorrect addresses for him as well as incorrect employment.

20.     In early November 2012, Plaintiff received Equifax's October 31, 2012 Investigative Report. Equifax verified the following accounts: American Express, #3499, Bank of America, #4170, Bank of America, #5490, Bank of America, #4888-9792, Bank of America, #5474, Bank of America, #6824-33, Capital One, #4802, Chase, #5401, and Discover, #6011. Equifax stated that the creditor had either verified these accounts as having the correct balance or a zero balance. Regarding the Advanta, #5477, account, Equifax stated:  "Please be advised that account included in bankruptcy does not report any balance." Equifax ignored Plaintiff's actual dispute - that none of these accounts actually belong to him. Equifax also did not state that Plaintiff disputes the Bank of America, #6824-33, Chase, #5401, or the Capital One, #4802, accounts.

21.     Plaintiff received another investigative report from Equifax dated November 2, 2012.  Equifax again verified the following accounts: Bank of America, #6824-58, Capital One, #4802, and Discover, #6011. Only the Bank of America, #6824-58, stated that Plaintiff disputes the account. Equifax continued to include the Bank of America. #6824-33 and Chase, #5401, accounts in his updated credit report and did not include language that he disputed these two

5

accounts. Equifax deleted two Bank of America accounts, #4888-9792 and #5490, from his credit report.

22.     The Trans Union credit report, dated November 1, 2012, verified that an American Express account, #3499, a Bank of America account, #4888-9792, and Discover account, #6011, were his accounts. There was no indication that Plaintiff disputed any of these accounts. Trans Union continued to report Rob's Auto as his employer.

23.     On or about December 14, 2012, Plaintiff again wrote to Defendants to dispute the inaccurate information in his credit reports.  This time he specifically told them that he thought they were mixing up his credit history with that of his son's. He asked them to exactly match his name, address, social security number and date of birth.

24.     In December 2012, Plaintiff also wrote to Advanta, American Express, Bank of America, and Discover, to inform them that they were reporting accounts that were not his. In late December 2012 Discover responded and wrote that it would delete the account information and inform Defendants that the Discover account was not his. American Express also responded in late December 2012 and stated that it too would delete the account information and would inform Defendants to remove any derogatory information regarding the American Express account.

25.     In January 2013, defendants Equifax and Trans Union responded to Plaintiff's dispute letters.  In the January 9, 2013 Investigative Report, Equifax again verified the Discover, #6011 and a Capital One, #4802, accounts as belonging to him. The January 2013 credit report continued to include the following disputed accounts and did not indicate that Plaintiff disputed these accounts: Bank of America, #4888-9792, Bank of America, #6824-33, Bank of America, #6824-58, and Capital One, #4802.

26.     Equifax also reinserted two prior Bank of America accounts, #4888-9792 and #5490, into the January 9, 2013 credit report. Each of these accounts had been deleted in the November 2, 2012 credit report.

27.     In the January 8, 2013 Investigative Report issued by Trans Union, it verified both the American Express, #3499, and Discover, #4802 accounts. Trans Union did not include a credit report with the Investigative Report.

28.     In February 2013, Plaintiff was denied credit from US Bank due to "excessive or derogatory trades". The information was obtained from CSC Credit Services and Equifax. Plaintiff's request to have his Capital One GM Mastercard, #5466, credit limit increased from $305.00 was also denied during this same time period.

29.     On or about April 22, 2013, Plaintiff again wrote to Defendants disputing the information in his credit reports. He disputed six (6) separate Bank of America accounts, a Capital One, #4802, account and the Discover, #6011, account with Equifax. He disputed the American Express, #3499, and Discover, #6011, accounts with Trans Union.

30.     On or about May 21, 2013 Equifax responded to Plaintiff's dispute letter. In its May 21, 2013 Investigative Report Equifax again verified the Discover, #6011, account. Equifax also reinstated and verified a Bank of America account, #5490, that had been deleted in the November 2, 2012 report.  Equifax did not state that Plaintiff disputed this Bank of America account.

31.     Trans Union did not respond to Plaintiff's April 22, 2013 letter. As of January 2013, Trans Union was reporting the American Express, #3499, and Discover, #6011, accounts as belonging to Plaintiff.

32.     Equifax's and Trans Union's unreasonable failure to reinvestigate the disputed information resulted in considerable stress, anxiety and extreme frustration for Plaintiff. Plaintiff was confused and aggravated by both Defendants' refusal to remove his son's credit information from his own credit files especially after he specifically told them that they were mixing his son's information with his own information.

33.     The FCRA and CCCRAA require that Equifax and Trans Union ("Defendants"), in preparing credit reports, "follow reasonable procedures to assure maximum possible accuracy of the information" in the report.  15 U.S.C. § 1681e(b) and California Civil Code section 1785.14(b).

34.     The FCRA and CCCRAA require that Defendants conduct a reasonable reinvestigation of any information that is disputed by a consumer to determine if the information is accurate.  Defendants must notify the source of the information of the dispute within five days.  Defendants must provide the source with all relevant information received from the consumer.  Defendants must complete the reinvestigation within 30 days.  Defendants must review and consider all relevant information provided by the consumer in conducting the reinvestigation.  Defendants must delete or modify information that is found to be inaccurate or incomplete, or that cannot be verified.  Defendants must notify consumers of the results of its reinvestigation.  Defendants must notify consumers of reinsertions of information that had been previously deleted.  15 U.S.C. § 1681i(a) and California Civil Code section 1785.16.

35.     The FCRA provides that Defendants may only furnish a consumer report to a person "which it has reason to believe … intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished."  15 U.S.C. § 1681b(a).

36.     The FCRA requires Defendants to send the consumer a report with the information in the consumer's file upon request by the consumer.  15 U.S.C. § 1681g.

37.     Defendants' policies and procedures do not insure compliance with the FCRA and CCCRAA.

38.     A major problem in the credit reporting industry is the mixed file.  A mixed file occurs when one consumer's information is placed on the consumer report of another consumer.  Defendants' procedures when matching consumer information to that specific consumer cause the mixing of one consumer with another.

39.     Mixed files create a false description of a consumer's credit history.  Further, mixed files result in the disclosure of a consumer's personal information when the consumer did not apply for credit, insurance or employment.

40.     Defendants know their matching procedures are causing inaccurate credit reports and mixed files.

41.     Mixed files are not a new phenomenon.  Defendants have known about the mixed file problem for at least forty (40) years.  *See Thompson v. San Antonio Retail Merchants Ass'n,* 682 F.2d 509 (5th Cir. 1982).

42.     Mixed files occur despite consumers' unique personal identifying information, such as Social Security numbers.  Defendants' matching logic allows information to be included in a consumer's file even when the Social Security numbers do not match nine out of nine digits.

43.     For example, Equifax's matching logic mixed two consumers' files when only seven out of the nine digits of the two consumers' Social Security numbers matched.  *Apodaca v. Discover Fin. Servs.,* 417 F.Supp.2d 1220, 1224 (D.N.M. 2006).

44.     In the 1990's the Federal Trade Commission ("FTC") filed a lawsuit against Equifax and Trans Union because of their failure to comply with the FCRA including the mixing of consumers' files.

45.     In the 1990's the Attorneys General of a number of states filed a lawsuit against Equifax and Trans Union because of their failure to comply with the FCRA including the mixing of consumers' files.

46.     In 1992, Trans Union signed a Consent Order with the Attorneys General of 17 states, including California.  *State of Alabama, et al v. Trans Union*, 92c 7101 (USDC Ill). (A true and original copy of which is attached as Exhibit A and fully incorporated herein.)  Trans Union agreed that it would maintain reasonable procedures to prevent the occurrence or reoccurrence of mixed files.  For example, procedures during the reinvestigation process include, assigning mixed

file cases to Senior Investigators who, as appropriate, must pull all files related to the consumer, fully verify disputed information, make any changes, deletions or additions to correct the file and resolve the dispute, and prepare a summary of the problem to be filed with another department for corrective action.

47.     In 1992, Equifax signed an Agreement of Assurances with the Attorneys General of 18 states, including California.  (A true and original copy of which is attached as Exhibit B and fully incorporated herein.) Equifax agreed it would maintain reasonable procedures to prevent mixed files by accepting and using a consumer's full identifying information (full first and last name, middle initial, full street address, zip code, year of birth, any generational designation, and social security number) for matching and identification purposes.

48.     In 1994, Equifax signed a Consent Order with the FTC.  Equifax agreed it would and the FTC ordered that Equifax must follow reasonable procedures to assure the maximum possible accuracy of the information on a consumer's file including, but not limited to, procedures to detect logical errors prior to reporting information on a consumer's file, procedures to prevent mixing as a result of data entry by third parties when the third party requests a consumer's report, and procedures during a reinvestigation specifically designed to resolve consumer disputes related to a mixed file. (Complaint and Decision and Order, issued by the Federal Trade Commission on August 14, 1995 *In the Matter of Equifax Credit Information Services Inc.*, Docket No. C-3611, 120 F.T.C. 577 (1995) (A true and original copy of which is attached as Exhibit C and fully incorporated herein.)

49.     Defendants continue to repeatedly mix consumers' files despite the agreements with the FTC and State Attorneys General, and hundreds of lawsuits filed against Defendants by consumers whose files have been mixed.

50.     In 2002, the jury in *Judy Thomas v. Trans Union LLC,* District of Oregon, Case No. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas with

another consumer and failed to un-mix them despite Ms. Thomas' disputes.  The jury awarded Ms. Thomas $5 million in punitive damages and $300,000 in actual damages.  Despite the verdict, Trans Union continues to mix consumers.

51.   Equifax and TransUnion continue to fail to perform adequate investigations and deliberately ignore their knowledge that in circumstances of consumer dispute over mistaken identity such as in mixed file disputes and identity theft disputes the FCRA and CCCRAA require that a credit agency perform an actual independent investigation of a dispute rather than deferring to the reporting bank and "parroting" the ACDV response of the bank.

52.   TransUnion received direct specific notice of the wrongfulness of its continuing violation in the decision in *Dixon-Rollins v. Experian Information Solutions, Inc*., Dist. Court, ED Pennsylvania, 2010 No. 09-0646 where the court concluded that "Trans Union's refusal to modify its reinvestigation procedures and insistence on mimicking the original sources' responses supports the conclusion that punitive damages are necessary to deter future violations," and emphasized "Trans Union's recidivist conduct" in that "Trans Union had been warned repeatedly that its reinvestigation obligation in verifying a disputed account requires more than parroting the original source's response. The court provided further clear notice to TransUnion in concluding that "Nevertheless, it [TransUnion] continues to ignore these judicial edicts and refuses to change the way it does business" and that "Based on its repeated conduct, it appears that TransUnion has made a risk-benefit analysis, concluding that it is worth the risk to continue doing business as usual and to ignore its obligations under the FCRA." *Dixon-Rollins v. Experian Information Solutions, Inc*., 753 F.Supp.2d 452, 465 (ED PA 2010).

53.   In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC,* Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $2.7 million in punitive damages and $219,000 in actual damages for willfully violating the FCRA by

mixing Angela Williams with another consumer and failing to un-mix them despite Ms. Williams'

disputes.  Despite the verdict, Equifax continues to mix consumers.

54.     On July 30, 2010, the jury in *Eric R. Drew v. Equifax Information Services, LLC,*

United States District Court for the Northern District of California, No. 3:07-cv-00726-SI, awarded

Eric Drew $6,326.69 in economic damages, $315,000 in noneconomic compensatory damages,

and $700,000 in punitive damages for willfully violating the FCRA by failing to reasonably

investigate and delete accounts Eric Drew disputed as arising from identity theft, where Equifax

did so despite being on notice since the 1995 FTC order between Equifax and the Federal Trade

Commission and the 1992 "Agreement of Assurances" between Equifax and a number of states

that is procedures for handling the related problems of mixed files and identity theft files were

insufficient and violated the FCRA in failing to perform adequate dispute investigations.

55.     On December 2, 2010 the District Court issued an order in *Eric R. Drew v. Equifax*

*Information Services, LLC,* United States District Court for the Northern District of California, No.

3:07-cv-00726-SI denying Equifax's motions for new trial and confirming the punitive damages

award based on the evidence that Equifax's violation of the FCRA "was the result of a policy

chosen after a careful cost benefit analysis, with full knowledge of the risks to those seeking

credit" and that "Plaintiff does fall squarely within the class of individual consumers that

defendant knowingly puts at risk with its reinvestigation policies." (A true and original copy of

which is attached as Exhibit D and fully incorporated herein.)

56.     Despite the judicial decisions providing specific notice to Equifax and Trans Union

that their ongoing investigation procedure is in willful violation of the FCRA, Equifax and Trans

Union continue to employ procedures resulting in routine failure to conduct the reasonable

investigation of consumer disputes related to reporting of mixed files and identity theft.

57.     The continuing misconduct of Equifax and TransUnion in deliberately sidestepping

the FCRA and CCCRAA duty to perform a reasonable investigation of consumer disputes over

mistaken identity in their credit files in mixed file disputes and identity theft disputes, has not been

corrected by past punitive damages awards and is unlikely to be corrected absent the injunctive

relief requested below.

58.     Despite federal law, Congressional mandates, federal and state government

enforcement actions, and hundreds of consumer lawsuits, mixed files remain a significant problem

for consumers, including Plaintiff.

59.     The sale of consumers' most private and sensitive personal and financial

information is a multi-billion dollar industry for Defendants.

60.     Equifax reported $2.2 billion in revenue for the 2012 year.

61.     Trans Union reported over $1 billion in revenue for the 2011 year.

62.     Plaintiff's credit reports and file have been obtained from Defendants and have

been reviewed many times by prospective and existing credit grantors and extenders of credit, and

the inaccurate information has been a substantial factor in precluding Plaintiff from obtaining

credit.

## FEDERAL LAW CLAIMS

### FIRST CLAIM FOR RELIEF
### (Violation of the FCRA (15 U.S.C. §1681 et seq) Against Equifax)

63.     Plaintiff re-alleges and incorporates herein by reference the allegations of the

preceding paragraphs as though set forth fully in this claim for relief.

64.     Plaintiff notified Equifax at least three times that he disputed the inaccurate

information contained in his credit report.  Plaintiff specifically told Equifax that his credit report

contained his son's credit information, his son's address(es), telephone number(s), and employer.

Equifax failed to comply with the requirements of the FCRA including but not limited to the

provisions of 15 USC §1681e(b), 15 USC §1681i, 15 USC §1681n and 15 USC §1681o.

**15 U.S.C. § 1681e(b):**

65.     Equifax prepared, compiled, issued, assembled, transferred, published and otherwise reproduced consumer reports regarding the plaintiff which contained information that was false, misleading and inaccurate as of September 18, 2012, and continuing through May 2013, including but not limited to reporting: (1) thirteen (13) separate derogatory accounts that did not belong to Plaintiff ; (2) incorrect addresses for Plaintiff; and (3) incorrect employment. Equifax failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to plaintiff in violation of 15 U.S.C. § 1681e(b), such failure resulting in erroneously mixing his son's credit history with his own credit history.

66.     Equifax further failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported by failing to apply procedures to take action to correct or delete the false reporting despite circumstances that it knew or reasonably should have known that it had mixed Plaintiff's son's credit history with that of Plaintiff's own credit history.

67.     Plaintiff's credit reports and file have been obtained from defendants and have been reviewed many times by prospective and existing credit grantors and extenders of credit, and the inaccurate information has been a substantial factor in precluding Plaintiff from obtaining credit. In the preceding twelve months Plaintiff applied for and was denied extensions of credit from Citibank, US Bank, and USAA based on Equifax' credit reporting. Capital One Bank reduced his credit limit and has refused to increase it based on Equifax' credit reporting.

68.     As a result of Equifax's failure to comply with the requirements of 15 U.S.C. §1681e(b), Plaintiff has suffered, and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

69.     Equifax's failure to comply with the requirements of 15 U.S.C. §1681e(b) is negligent within the meaning 15 U.S.C. § 1681o.

70.     As a direct and proximate result of Equifax's negligent violation of 15 U.S.C. §1681e(b) in failing to maintain and follow reasonable procedures to assure maximum possible accuracy of the information it reported on Plaintiff's credit report, Plaintiff suffered actual damage as set forth herein.

71.     Equifax is liable to the plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, which he may recover therefore pursuant to 15 U.S.C. §1681o.

72.     Equifax's failure to comply with the requirements of 15 U.S.C. §1681e(b) is willful within the meaning 15 U.S.C. §1681n(a).

73.     Equifax pursuant to its corporate policy did not maintain procedures for maximum possible accuracy in reporting by proper response to dispute notification by Plaintiff, rather according to its corporate policy, Equifax failed to investigate the Plaintiff's claim Equifax had mixed his credit information with that of his son's credit history or to verify Plaintiff's claim. Equifax instead did not take any steps to check if Plaintiff's son's credit history had been mixed with Plaintiff's credit history or to otherwise investigate Plaintiff's claim.

74.     Equifax knew or should have known and operated with reckless disregard of the risk that its corporate policy created an unreasonable risk of violation of the statutory consumer protections of the FCRA that Plaintiff would be harmed by its policy leading to likely violation of the FCRA resulting in adverse and derogatory information reported regarding Plaintiffs credit worthiness.

75.     As a direct and proximate result of Equifax's willful violation of 15 U.S.C. §1681e(b) by failure to maintain and follow reasonable procedures to assure maximum possible accuracy of the information it reported regarding Plaintiff's credit history, Plaintiff was damaged

and Equifax is liable to Plaintiff for the actual damages Plaintiff sustained by reason of such conduct together with statutory and punitive damages as well as his reasonable attorney's fees and costs pursuant to 15 U.S.C. §1681n.

**15 U.S.C. §1681i(a)(1)(A):**

76.     At one or more times after notice of dispute Equifax breached its 15 USC §1681i(a)(1)(A) duty to conduct a reasonable dispute reinvestigation, including:

> (a)  By accepting the ACDV responses from Bank of America, Capital One, and Discover merely with an automatic electronic computer verification without any actual investigation activity by a human being;
>
> (b)  By otherwise failing to conduct actual dispute investigations;
>
> (c)  By conducting only a superficial investigation;
>
> (d)  By conducting an investigation that merely looked to see whether the disputed information was reported as it was received from Bank of America, Capital One and Discover rather than considering whether the substance of the information was accurate;
>
> (e)  By failing to consider or evaluate a number of internal inconsistencies in the reporting in response to Bank of America ACDV's which lead to a Bank of America, #5490, account, being deleted from Plaintiff's November 2012 credit report and then reinserted in his January 2013 and May 2013 credit reports and a Bank of America, #4888-9792, account being deleted in his November 2012 credit report and reinstated in his January 2013 credit report;
>
> (f)  By failing to contact any person at Bank of America, Capital One or Discover to confirm or deny Plaintiff's claim that those accounts did not belong to him;
>
> (g)  By failing to contact the Plaintiff directly to learn of the reason for the dispute and/or his explanation of the facts or any missing information;

(h)  By failing to consider the information contained in the prior disputes of the trade line information or the other prior complaints and other communications made by Plaintiff directly to Bank of America and Discover regarding these accounts;

(i)  By failing to consider information and conclusions arising from prior investigations concerning the information that was the subject of the disputed trade lines; and

(j)  By failing to make a determination of whether Plaintiff was correct that the accounts listed were not his and that Equifax was mixing his son's credit information with his own credit information, that Discover had acknowledged that the Discovery account information should be deleted.

77.   Equifax failed to conduct meaningful investigation as to the quality of response of the credit information received from the furnishers to the dispute notices by the credit reporting agency regarding the false information and disputes identified by Plaintiff and instead deferred to the inadequate investigation and responses by the credit information furnishers despite knowledge of the probability of lack of thorough investigation upon initial dispute notice.

78   In such manner and otherwise the credit agency Equifax failed to properly reinvestigate Plaintiff's disputes, performed perfunctory and essentially useless investigations and/or reinvestigation resulting in incorrect verification of the false reports and continued to prepare and issue false consumer reports including the false, derogatory credit report entries and Plaintiff continued to suffer injury.

**15 U.SC. §1681i(a)(2)(A):**

79.   At one or more times after notice of dispute Equifax breached its 15 USC §1681i(a)(2)(A) duty when providing notice of dispute to the furnisher of the information by

failing to include all relevant information regarding the dispute that the agency received from the consumer.

80.     Equifax did not forward actual copies of the dispute correspondence and information, instead only forwarding an abbreviated electronic summary.

**15 U.S.C §1681i(a)(4):**

81.     At one or more times after notice of dispute Equifax breached its 15 USC §1681i(a)(4) duty to consider all information submitted by the consumer, including but not limited to:

> (a)  By failing to consider the clear and unequivocal information that Plaintiff's son's credit history was mixed with Plaintiff's credit history; and
>
> (b)   By failing to consider Equifax's own credit data that up to January 2012 Plaintiff has excellent credit with no derogatory trade lines ever being reported.

**15 U.S.C §1681i(a)(5)(A):**

82.     At one or more times after notice of dispute Equifax breached its 15 USC §1681i(a)(5) duty to promptly modify or delete the disputed information from the consumer's file if the disputed information cannot  be verified.  The disputed information was not verified.  The disputed information could not be verified because it was incorrect and could not be correct.  The disputed information was a type of information that could not be completely verified by the procedures employed by Equifax of simply relying on the electronic response of the furnisher of the information.

**15 U.S.C §1681i(a)(5)(B):**

83.     At one or more times after notice of dispute Equifax breached its duty under 15 USC § 1681i(a)(5)(B)(i) when it reinserted two Bank of America accounts that had been previously deleted without first having Bank of America certify the information as complete and accurate.   At one or more times after notice of dispute Equifax breached its duty under 15 USC §

1681i(a)(5)(B)(ii) by not notifying Plaintiff that the deleted accounts had been reinserted into his credit reports within 5 business days. At one or more times after notice of dispute Equifax breached its duty under 15 USC § 1681i(a)(5)(B)(iii) by not providing Plaintiff with a written statement that the disputed information has been reinserted, the business name and address, and telephone number of Bank of America.

84.     In these ways and others Equifax negligently failed to adopt and/or follow reasonable procedures to insure the proper reinvestigation, accuracy, deletion and/or permanent suppression of disputed inaccurate information appearing in the Plaintiff's consumer reports in violation of 15 U.S.C. §1681i, including failure to conduct a reasonable investigation of the dispute, failure to "include all relevant information regarding the dispute that the agency has received from the consumer" when providing notice of dispute to the furnisher of the information , failure to consider all information submitted by the consumer, and failure to modify or delete information which could not be verified.

85.     As a direct and proximate result of such conduct, the Plaintiff suffered actual damages as set forth herein.

86.     Equifax is liable to Plaintiff for the actual damages he has sustained by reason of such negligent conduct, in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. §1681o.

87.     At one or more times after notice of dispute Equifax willfully breached its 15 USC §1681i(a)(1)(A) duty to conduct a reasonable dispute reinvestigation.

88.     At one or more times after notice of dispute Equifax willfully breached its 15 USC §1681i(a)(2)(A) duty when providing notice of dispute to the furnisher of the information by failing to include all relevant information regarding the dispute that the agency received from the consumer.

89.     At one or more times after notice of dispute Equifax willfully breached its 15 USC §1681i(a)(4) duty to consider all information submitted by the consumer.

90.     At one or more times after notice of dispute Equifax willfully breached its 15 USC §1681i(a)(5) duty to promptly modify or delete the disputed information from the consumer's file if it cannot be verified, to not reinsert previously deleted disputed information without proper verification.

91.     Equifax, pursuant to its corporate policy, did not maintain procedures for maximum possible accuracy in reporting by proper response to dispute notification by Plaintiff, rather according to its corporate policy, Equifax failed to investigate Plaintiff's claim that Equifax had mixed his credit information with that of his son's credit history or to verify Plaintiff's claim. Equifax instead did not take any steps to check if Plaintiff's son's credit history had been mixed with Plaintiff's credit history or to otherwise investigate Plaintiff's claim.

92.     The acts alleged herein of Equifax were willful and malicious and were done with fraud or oppression, and in reckless disregard of Plaintiff's rights and were intended to or were known likely to oppress and cause injury to Plaintiff and were done within the course and scope of the Defendant's employees' employment and/or managerial authority or pursuant to company policy.  Plaintiff is therefore entitled to an award of punitive damages pursuant to 15 U.S.C. §1681n Equifax knew or should have known and operated with reckless disregard of the risk that its corporate policy created an unreasonable risk of violation of the statutory consumer protections of the FCRA that Plaintiff would be harmed by its policy leading to likely violation of the FCRA resulting in adverse and derogatory information reported regarding Plaintiff's credit worthiness.

93.     As a direct and proximate result of Equifax's willful violation of 15 U.S.C. §1681i Plaintiff was damaged and Equifax is liable to Plaintiff for the actual damages Plaintiff sustained by reason of such willful conduct together with statutory and punitive damages as well as his reasonable attorney's fees and costs pursuant to 15 U.S.C. §1681n.

WHEREFORE Plaintiff prays for relief as set forth below.

## SECOND CLAIM FOR RELIEF
### (Violation of the FCRA (15 U.S.C. §1681 et seq) Against Trans Union)

94.     Plaintiff re-alleges and incorporates herein by reference the allegations of the preceding paragraphs as though set forth fully in this claim for relief.

95.     Plaintiff notified Trans Union at least three times that he disputed the inaccurate information.  Plaintiff specifically told Trans Union that his credit report contained his son's credit information, his son's address(es), telephone number(s), and employer. Trans Union failed to comply with all the requirements of the FCRA including but not limited to the provisions of 15 USC §1681e(b), 15 USC §1681i, 15 USC §1681n and 15 USC §1681o.

**15 U.S.C. § 1681e(b):**

96.     Trans Union prepared, compiled, issued, assembled, transferred, published and otherwise reproduced consumer reports regarding Plaintiff which contained information that was false, misleading and inaccurate as of September 18, 2012 including but not limited to: (1) nine (9) separate accounts that did not belong to Plaintiff which contained derogatory information; (2) incorrect addresses for Plaintiff; and (3) incorrect employment. Trans Union failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to plaintiff in violation of 15 U.S.C. §1681e(b), such failure resulting in erroneously mixing his son's credit history with his own credit history.

97.     Trans Union further failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported by failing to apply procedures to take action to correct or delete the false reporting despite circumstances that it knew or reasonably should have known that it had mixed Plaintiff's son's credit history with that of Plaintiff's own credit history.

98.     Plaintiff's credit reports and file have been obtained from defendants and have been reviewed many times by prospective and existing credit grantors and extenders of credit, and the inaccurate information has been a substantial factor in precluding Plaintiff from obtaining credit.

99.     As a result of Trans Union's failure to comply with the requirements of 15 U.S.C. §1681e(b), Plaintiff has suffered, and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

100.    Trans Union's failure to comply with the requirements of 15 U.S.C. §1681e(b) is negligent within the meaning 15 U.S.C. §1681o.

101.    As a direct and proximate result of Trans Union's negligent violation of 15 U.S.C. §1681e(b) in failing to maintain and follow reasonable procedures to assure maximum possible accuracy of the information it reported on Plaintiff's credit report, Plaintiff suffered actual damage as set forth herein.

102.    Trans Union's failure to comply with the requirements of 15 U.S.C. §1681e(b) is willful within the meaning 15 U.S.C. §1681n(a).

103.    Trans Union, pursuant to its corporate policy, did not maintain procedures for maximum possible accuracy in reporting by proper response to dispute notification by Plaintiff, rather according to its corporate policy, Trans Union failed to investigate Plaintiff's claim that Trans Union had mixed his credit information with that of his son's credit history or to verify Plaintiff's claim.  Trans Union instead did not take any steps to check if Plaintiff's son's credit history had been mixed with Plaintiff's credit history or to otherwise investigate Plaintiff's claim.

104.    Trans Union knew or should have known and operated with reckless disregard of the risk that its corporate policy created an unreasonable risk of violation of the statutory consumer protections of the FCRA that Plaintiff would be harmed by its policy leading to likely violation of

the FCRA resulting in adverse and derogatory information reported regarding Plaintiffs credit worthiness.

105.    As a direct and proximate result of Trans Union's willful violation of 15 U.S.C. §1681e(b) by failure to maintain and follow reasonable procedures to assure maximum possible accuracy of the information it reported regarding Plaintiff's credit history, Plaintiff was damaged and Trans Union is liable to Plaintiff for the actual damages Plaintiff sustained by reason of such conduct together with statutory and punitive damages as well as his reasonable attorney's fees and costs pursuant to 15 U.S.C. §1681n.

**15 U.S.C. § 1681i(a)(1)(A):**

106.    At one or more times after notice of dispute Trans Union breached its 15 USC §1681i(a)(1)(A) duty to conduct a reasonable dispute reinvestigation, including:

(a)  By accepting the ACDV responses from American Express, Bank of America, and Discover merely with an automatic electronic computer verification without any actual investigation activity by a human being;

(b)  By otherwise failing to conduct actual dispute investigations,

(c)  By conducting only a superficial investigation;

(d)  By conducting an investigation that merely looked to see whether the disputed information was reported as it was received from American Express, Bank of America, and Discover rather than considering whether the substance of the information was accurate;

(e)  By failing to consider or evaluate the fact that Equifax and Experian Information Solutions, Inc. had deleted Plaintiff's American Express, #3499, account disputed by Plaintiff;

(f)  By failing to contact any person at American Express, Bank of America, or Discover to confirm or deny Plaintiff's claim that those accounts did not belong to him;

(g)  By failing to contact Plaintiff directly to learn of the reason for the dispute and/or his explanation of the facts or any missing information;

(h)  By failing to consider the information contained in the prior disputes of the trade line information or the other prior complaints and other communications made by Plaintiff directly to American Express, Bank of America and Discover regarding these accounts;

(i)  By failing to consider information and conclusions arising from prior investigations concerning the information that was the subject of the disputed trade lines; and

(j)  By failing to make a determination of whether Plaintiff was correct that the accounts listed were not his and that Trans Union was mixing his son's credit information with his own credit information, and that American Express and Discover had acknowledged that the American Express account information and Discover account information should be deleted.

107.   Trans Union failed to conduct meaningful investigation as to the quality of response of the credit information furnisher defendants to the inquiries of the credit reporting agencies regarding the false information and disputes identified by Plaintiff and instead deferred to the inadequate investigation and responses by the credit information furnishers despite knowledge of the probability of lack of thorough investigation upon initial dispute notice.

108.   In such manner and otherwise the credit agency Trans Union failed to properly reinvestigate Plaintiff's disputes, performed perfunctory and essentially useless investigations and/or reinvestigation resulting in their incorrect verification of the false reports and continued to

prepare and issue false consumer reports including  the false, derogatory credit report entries and

Plaintiff continued to suffer injury.

**15 U.S.C. § 1681i(a)(2)(A):**

109.    At one or more times after notice of dispute Trans Union breached its 15 USC §1681i(a)(2)(A) duty when providing notice of dispute to the furnisher of the information by failing to include all relevant information regarding the dispute that the agency received from the consumer.

110.    Trans Union did not forward actual copies of the dispute correspondence and information, instead only forwarding an abbreviated electronic summary.

**15 U.S.C. § 1681i(a)(4):**

111.    At one or more times after notice of dispute Trans Union breached its 15 USC §1681i(a)(4) duty to consider all information submitted by the consumer, including but not limited to:

> (a)   By failing to consider the clear and unequivocal information that Plaintiff's son's credit history was mixed with Plaintiff's credit history; and

> (b)  By failing to consider Trans Union's own credit data that up to January 2012 Plaintiff has excellent credit with no derogatory trade lines ever being reported.

**15 U.S.C § 1681i(a)(5):**

112.    At one or more times after notice of dispute Trans Union breached its 15 USC §1681i(a)(5) duty to promptly modify or delete the disputed information from the consumer's file if the disputed information cannot  be verified.  The disputed information was not verified.  The disputed information could not be verified because it was incorrect and could not be correct.  The disputed information was a type of information that could not be completely verified by the procedures employed by Trans Union of simply relying on the electronic response of the furnisher of the information.

**15 U.S.C § 1681(a)(6):**

113.    Trans Union breached its 15 USC §1681i(a)(5) duty to report the results of its investigation to Plaintiff when it did not respond to Plaintiff's April 19, 2013 letter disputing the American Express account, #3499, and the Discover account, #6011.

114.    In these ways and others Trans Union negligently failed to adopt and/or follow reasonable procedures to insure the proper reinvestigation, accuracy, deletion and/or permanent suppression of disputed inaccurate information appearing in the Plaintiff's consumer reports in violation of 15 U.S.C. §1681i, including failure to conduct a reasonable investigation of the dispute, failure to "include all relevant information regarding the dispute that the agency has received from the consumer" when providing notice of dispute to the furnisher of the information , failure to consider all information submitted by the consumer, failure to modify or delete information which could not be verified and failure to report the results of its investigation to Plaintiff.

115.    Trans Union is liable to Plaintiff for the actual damages he has sustained by reason of such negligent conduct, in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. §1681o.

116.    At one or more times after notice of dispute Trans Union willfully breached its 15 USC §1681i(a)(1)(A) duty to conduct a reasonable dispute reinvestigation.

117.    At one or more times after notice of dispute Trans Union willfully breached its 15 USC §1681i(a)(2)(A) duty when providing notice of dispute to the furnisher of the information by failing to include all relevant information regarding the dispute that the agency received from the consumer.

118.    At one or more times after notice of dispute Trans Union willfully breached its 15 USC §1681i(a)(4) duty to consider all information submitted by the consumer.

119.   At one or more times after notice of dispute Trans Union willfully breached its 15 USC §1681i(a)(5) duty to promptly modify or delete the disputed information from the consumer's file if it cannot be verified.

120.   At one or more times after notice of dispute Trans Union willfully breached its 15 USC §1681i(a)(6) duty to report the results of its investigation to Plaintiff when it did not respond to Plaintiff's April 19, 2013 letter disputing the American Express account, #3499, and the Discover account, #6011.

121.   Trans Union is liable to Plaintiff for the actual damages he has sustained by reason of such negligent conduct, in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. §1681o.

122.   Trans Union, pursuant to its corporate policy, did not maintain procedures for maximum possible accuracy in reporting by proper response to dispute notification by Plaintiff, rather according to its corporate policy, Trans Union failed to investigate Plaintiff's claim that Trans Union had mixed his credit information with that of his son's credit history or to verify Plaintiff's claim.  Trans Union instead did not take any steps to check if Plaintiff's son's credit history had been mixed with Plaintiff's credit history or to otherwise investigate Plaintiff's claim.

123.   The acts alleged herein of Trans Union were willful and malicious and were done with fraud or oppression, and in reckless disregard of Plaintiff's rights and were intended to or were known likely to oppress and cause injury to Plaintiff and were done within the course and scope of the Defendant's employees' employment and/or managerial authority or pursuant to company policy.  Plaintiff is therefore entitled to an award of punitive damages pursuant to 15 U.S.C. §1681n Trans Union knew or should have known and operated with reckless disregard of the risk that its corporate policy created an unreasonable risk of violation of the statutory consumer protections of the FCRA that Plaintiff would be harmed by its policy leading to likely violation of

the FCRA resulting in adverse and derogatory information reported regarding Plaintiff's credit worthiness.

124.    As a direct and proximate result of Trans Union's willful violation of 15 U.S.C. §1681i Plaintiff was damaged and Trans Union is liable to Plaintiff for the actual damages Plaintiff sustained by reason of such willful conduct together with statutory and punitive damages as well as his reasonable attorney's fees and costs pursuant to 15 U.S.C. §1681n.

WHEREFORE Plaintiff prays for relief as set forth below.

## STATE LAW CLAIMS

### THIRD CLAIM FOR RELIEF
**(Violation of California Consumer Credit Reporting Agencies Act (California Civil Code §1785 et seq) Against Equifax)**

125.    Plaintiff re-alleges and incorporates herein by reference the allegations of the preceding paragraphs as though set forth fully in this claim for relief.

126.    In doing the acts alleged herein, Equifax failed to comply with the requirements of CCCRAA including provisions in effect on September 30, 1996, including but not limited to California Civil Code § 1785.14(b), §1785.16 and §1785.31.

**CALIFORNIA *CIVIL CODE* §1785.14(b)**

127.    Equifax prepared, compiled, issued, assembled, transferred, published and otherwise reproduced consumer reports regarding the plaintiff which contained information that was false, misleading and inaccurate as of September 18, 2012, and continuing through May 2013, including but not limited to reporting: (1) thirteen (13) separate derogatory accounts that did not belong to Plaintiff; (2) incorrect addresses for Plaintiff; and (3) incorrect employment. Equifax failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to plaintiff in violation of Civil Code § 1785.14(b), such failure resulting in erroneously mixing his son's credit history with his own credit history.

128.    In the manner set forth above and otherwise Equifax failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to plaintiff, in violation of California Civil Code §1785.14(b) including by erroneously reporting Plaintiff's son's credit history instead of Plaintiff's own credit history.

129.    Equifax further failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported by failing to apply procedures to take action to correct or delete the false reporting despite circumstances that it knew or reasonably should have known that it had mixed Plaintiff's son's credit history with that of Plaintiff's own credit history.

130.    Plaintiff's credit reports and file have been obtained from defendants and have been reviewed many times by prospective and existing credit grantors and extenders of credit, and the inaccurate information has been a substantial factor in precluding Plaintiff from obtaining credit. In the preceding twelve months Plaintiff applied for and was denied extensions of credit from Citibank, US Bank, and USAA based on Equifax' credit reporting. Capital One Bank reduced his credit limit and has refused to increase it based on Equifax' credit reporting.

131.    Equifax's failure to comply with the requirements of California Civil Code §1785.14(b) is negligent within the meaning of California Civil Code §1785.31(a)(1).

132.    As a direct and proximate result of Equifax's negligent violation of California Civil Code §1785.14(b) in failing to maintain and follow reasonable procedures to assure maximum possible accuracy of the information it reported, Plaintiff suffered actual damage as set forth herein.

133.    Equifax is liable to Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, which he may recover therefore pursuant to California Civil Code §1785.31(a)(1).

134.     Equifax's failure to comply with the requirements of California Civil Code §1785.14(b) is willful within the meaning of California Civil Code §1785.31(a)(2).

135.     As a direct and proximate result of Equifax's willful violation of California Civil Code §1785.14(b) by failure to maintain and follow reasonable procedures to assure maximum possible accuracy of the information it reported, Plaintiff has sustained damages and Equifax is liable to the Plaintiff for the actual damage he suffered along with punitive damages as well as Plaintiff's reasonable attorney's fees and costs pursuant to California Civil Code §1785.31(a)(2).

**CALIFORNIA *CIVIL* CODE §1785.16(a):**

136.     At one or more times after notice of dispute Equifax breached its duty to conduct a reasonable dispute reinvestigation pursuant to California Civil Code §1785.16(a), including in the manner set forth above and otherwise and:

(a)  By accepting the ACDV responses from Bank of America, Capital One, and Discover merely with an automatic electronic computer verification without any actual investigation activity by a human being,

(b)  By otherwise failing to conduct actual dispute investigations,

(c)  By conducting only a superficial investigation,

(d)  By conducting an investigation that merely looked to see whether the disputed information was reported as it was received from Bank of America, Capital One and Discover rather than considering whether the substance of the information was accurate,

(e)  By failing to consider or evaluate a number of internal inconsistencies in the reporting in response to Bank of America ACDV's which lead to a Bank of America account being deleted from Plaintiff's November 2012 credit report and then reinserted in his May 2013 credit report.

(f)  By failing to contact any person at Bank of America, Capital One or Discover to confirm or deny Plaintiff's claim that those accounts did not belong to him.

(g)  By failing to contact the Plaintiff directly to learn of the reason for the dispute and/or his explanation of the facts or any missing information,

(h)  By failing to consider the information contained in the prior disputes of the trade line information or the other prior complaints and other communications made by Plaintiff directly to Bank of America and Discover regarding these accounts,

(i)  By failing to consider information and conclusions arising from prior investigations concerning the information that was the subject of the disputed trade lines,

(j)  By failing to make a determination of whether Plaintiff was correct that the accounts listed were not his and that Equifax was mixing his son's credit information with his own credit information, that Discover had acknowledged that the Discovery account information should be deleted.

137.    Equifax negligently failed to adopt and/or follow reasonable procedures to insure the proper reinvestigation, accuracy, deletion and/or permanent suppression of disputed inaccurate information appearing in Plaintiff's consumer reports as contained in its files pertaining to Plaintiff or in credit reports supplied to third parties in violation of California Civil Code §1785.16(a)

138.    Equifax failed to conduct meaningful investigation as to the quality of response of the credit information furnisher defendants to the inquiries of the credit reporting agencies regarding the false information and disputes identified by Plaintiff and instead deferred to the inadequate investigation and responses by the credit information furnishers despite knowledge of the probability of lack of thorough investigation upon initial dispute notice.

139.    In such manner and otherwise the credit agency Equifax failed to properly reinvestigate Plaintiff's disputes, performed perfunctory and essentially useless investigations and/or reinvestigation resulting in their incorrect verification of the false reports and continued to prepare and issue false consumer reports including the false, derogatory credit report entries and Plaintiff continued to suffer injury.

140.    Equifax, pursuant to its corporate policy, did not maintain procedures for maximum possible accuracy in reporting by proper response to dispute notification by Plaintiff, rather according to its corporate policy, Equifax failed to investigate Plaintiff's claim that Equifax had mixed his credit information with that of his son's credit history or to verify Plaintiff's claim. Equifax instead did not take any steps to check if Plaintiff's son's credit history had been mixed with Plaintiff's credit history or to otherwise investigate Plaintiff's claim. Equifax knew or should have known that its corporate policy created an unreasonable risk that the California consumer protection laws would be violated causing Plaintiff or others like him to be harmed by the policy and adverse and derogatory information would be reported regarding Plaintiff's credit worthiness.

**CALIFORNIA *CIVIL* CODE §1785.16(b):**

141.    At one or more times after notice of dispute Equifax breached its California Civil Code §1785.16(b) duty to consider all information submitted by the consumer, including but not limited to:

      (a)   By failing to consider the clear and unequivocal information that Plaintiff's son's credit history was mixed with Plaintiff's credit history; and

      (b)  By failing to consider Equifax's own credit data that up to January 2012 Plaintiff has excellent credit with no derogatory trade lines ever being reported.

142.    At one or more times after notice of dispute Equifax breached its California Civil Code §1785.16(b) duty to promptly add, correct or delete the disputed information from the consumer's file if it can no longer be verified by the  evidence submitted.

**CALIFORNIA *CIVIL* CODE §1785.16(c):**

143.    At one or more times after notice of dispute Equifax breached its duty under California Civil Code §1785.16(c), including in the manner set forth above and otherwise and:

(a) By reinserting two Bank of America accounts that had been previously deleted without first having Bank of America certify the information as complete and accurate;

(b) By not notifying Plaintiff that the deleted accounts had been reinserted into his credit reports within 5 business days;

(c) By not providing Plaintiff with a written statement that the disputed information has been reinserted, and the business name and address, and telephone number of Bank of America within 15 business days.

144.    Equifax is liable to Plaintiff for the actual damages he has sustained by reason of such negligent conduct in violation of California Civil Code §1785.16 in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to California *Civil Code* §1785.31(a)(1).

145.    Equifax willfully failed to adopt and/or follow reasonable procedures to insure the proper reinvestigation, accuracy, deletion and/or permanent suppression of inaccurate information appearing in the plaintiff's consumer reports as contained in its files pertaining to Plaintiff's credit reports supplied to third parties.

146.    At one or more times after notice of dispute Equifax willfully breached its California Civil Code §1785.16(a) duty to conduct a reasonable dispute reinvestigation.

147.    At one or more times after notice of dispute Equifax willfully breached its California Civil Code §1785.16(b) duty to consider all information submitted by the consumer.

148.    At one or more times after notice of dispute Equifax willfully breached its California Civil Code §1785.16(b) duty to delete information that could not be verified.

149.    At one or more times after notice of dispute Equifax willfully breached its California Civil Code §1785.16(c) duty to not reinstate previously deleted information that could not be verified, and to properly inform Plaintiff of the reinsertion of the deleted information.

150.    As a direct and proximate result of such conduct, Plaintiff suffered actual damages as set forth herein.

151.    Equifax's acts alleged herein in violation of California Civil Code §1785.16 were willful and malicious and were done with fraud or oppression, and in reckless disregard of Plaintiff's rights and were intended to or were known likely to oppress and cause injury to Plaintiff and were done within the course and scope of the Equifax's employees' employment and/or managerial authority or pursuant to company policy.  Plaintiff is therefore entitled to an award of punitive damages pursuant to California Civil Code §1785.31(a).

152.    Equifax is liable to the Plaintiff for the actual damages he has sustained by reason of such willful conduct, in an amount to be determined by the trier of fact, together with punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees pursuant to California *Civil* Code §1785.31(a)(2).

153.    Pursuant to California Civil Code §1785.31(b) Plaintiff is entitled to injunctive relief against Equifax.

154.    The unlawful acts of Equifax described herein of mixing Plaintiff's credit file with those of his son and failing to investigate and remove the disputed accounts despite repeated efforts of Plaintiff to persuade Equifax to act properly presents a continuing threat of danger to Plaintiff and cannot be remedied by damages alone in that Equifax continues to maintain and publish the incorrect information, and without issuance of an appropriate injunctive order Equifax will continue to do so.

155.    Plaintiff seeks an order enjoining Equifax from engaging in the acts and practices as hereinabove alleged, and ordering that Equifax permanently block, delete or suppress all of the account information for those accounts which do not belong to Plaintiff.

WHEREFORE Plaintiff prays for relief as set forth below.

### FOURTH CLAIM FOR RELIEF
### (Violation of California Consumer Credit Reporting Agencies Act (California Civil Code §1785 et seq) Against Trans Union)

156.    Plaintiff re-alleges and incorporates herein by reference the allegations of the preceding paragraphs as though set forth fully in this claim for relief.

157.    In doing the acts alleged herein, Trans Union failed to comply with the requirements of CCCRAA including provisions in effect on September 30, 1996, including but not limited to California Civil Code § 1785.14(b), §1785.16 and §1785.31.

**CALIFORNIA *CIVIL CODE* §1785.14(b)**

158.    Trans Union prepared, compiled, issued, assembled, transferred, published and otherwise reproduced consumer reports regarding Plaintiff which contained information that was false, misleading and inaccurate as of September 18, 2012 including but not limited to: (1) nine (9) separate accounts that did not belong to Plaintiff which contained derogatory information; (2) incorrect addresses for Plaintiff; and (3) incorrect employment. Trans Union failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to plaintiff in violation of California Civil Code §1785.14(b), such failure resulting in erroneously mixing his son's credit history with his own credit history.

159.    In the manner set forth above and otherwise Trans Union failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to plaintiff, in violation of California Civil Code

§1785.14(b) including by erroneously reporting Plaintiff's son's credit history instead of Plaintiff's own credit history.

160.    Trans Union further failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported by failing to apply procedures to take action to correct or delete the false reporting despite circumstances that it knew or reasonably should have known that it had mixed Plaintiff's son's credit history with that of Plaintiff's own credit history.

161.    Plaintiff's credit reports and file have been obtained from defendants and have been reviewed many times by prospective and existing credit grantors and extenders of credit, and the inaccurate information has been a substantial factor in precluding Plaintiff from obtaining credit.

162.    Trans Union's failure to comply with the requirements of California Civil Code §1785.14(b) is negligent within the meaning of California Civil Code §1785.31(a)(1).

163.    As a direct and proximate result of Trans Union's negligent violation of California Civil Code §1785.14(b) in failing to maintain and follow reasonable procedures to assure maximum possible accuracy of the information it reported, Plaintiff suffered actual damage as set forth herein.

164.    Trans Union is liable to Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, which he may recover therefore pursuant to California Civil Code §1785.31(a)(1).

165.    Trans Union's failure to comply with the requirements of California Civil Code §1785.14(b) is willful within the meaning of California Civil Code §1785.31(a)(2).

166.    As a direct and proximate result of Trans Union's willful violation of California Civil Code §1785.14(b) by failure to maintain and follow reasonable procedures to assure maximum possible accuracy of the information it reported, Plaintiff has sustained damages and Trans Union is liable to the Plaintiff for the actual damage he suffered along with punitive

damages as well as Plaintiff's reasonable attorney's fees and costs pursuant to California Civil Code §1785.31(a)(2).

**CALIFORNIA *CIVIL CODE* §1785.16(a):**

167.    At one or more times after notice of dispute Trans Union breached its duty to conduct a reasonable dispute reinvestigation pursuant to California Civil Code §1785.16(a), including in the manner set forth above and otherwise and:

(a)  By accepting the ACDV responses from American Express, Bank of America, and Discover merely with an automatic electronic computer verification without any actual investigation activity by a human being,

(b)  By otherwise failing to conduct actual dispute investigations,

(c)  By conducting only a superficial investigation,

(d)  By conducting an investigation that merely looked to see whether the disputed information was reported as it was received from American Express, Bank of America, and Discover rather than considering whether the substance of the information was accurate,

(e)  By failing to consider or evaluate the fact that Equifax and Experian Information Solutions, Inc. had deleted Plaintiff's American Express account disputed by Plaintiff,

(f)  By failing to contact any person at American Express, Bank of America, or Discover to confirm or deny Plaintiff's claim that those accounts did not belong to him,

(g)  By failing to contact Plaintiff directly to learn of the reason for the dispute and/or his explanation of the facts or any missing information,

(h)  By failing to consider the information contained in the prior disputes of the trade line information or the other prior complaints and other communications

made by Plaintiff directly to American Express, Bank of America and Discover regarding these accounts,

(i) By failing to consider information and conclusions arising from prior investigations concerning the information that was the subject of the disputed trade lines,

(j) By failing to make a determination of whether Plaintiff was correct that the accounts listed were not his and that Trans Union was mixing his son's credit information with his own credit information, and that American Express and Discover had acknowledged that the American Express account information and Discover account information should be deleted.

168.    Trans Union negligently failed to adopt and/or follow reasonable procedures to insure the proper reinvestigation, accuracy, deletion and/or permanent suppression of disputed inaccurate information appearing in Plaintiff's consumer reports as contained in its files pertaining to Plaintiff or in credit reports supplied to third parties in violation of California Civil Code §1785.16(a)

169.    Trans Union failed to conduct meaningful investigation as to the quality of response of the credit information furnisher defendants to the inquiries of the credit reporting agencies regarding the false information and disputes identified by Plaintiff and instead deferred to the inadequate investigation and responses by the credit information furnishers despite knowledge of the probability of lack of thorough investigation upon initial dispute notice.

170.    In such manner and otherwise the credit agency Trans Union failed to properly reinvestigate Plaintiff's disputes, performed perfunctory and essentially useless investigations and/or reinvestigation resulting in their incorrect verification of the false reports and continued to prepare and issue false consumer reports including the false, derogatory credit report entries and Plaintiff continued to suffer injury.

171.     Trans Union, pursuant to its corporate policy, did not maintain procedures for maximum possible accuracy in reporting by proper response to dispute notification by Plaintiff, rather according to its corporate policy, Trans Union failed to investigate Plaintiff's claim that Trans Union had mixed his credit information with that of his son's credit history or to verify Plaintiff's claim.  Trans Union instead did not take any steps to check if Plaintiff's son's credit history had been mixed with Plaintiff's credit history or to otherwise investigate Plaintiff's claim.  Trans Union knew or should have known that its corporate policy created an unreasonable risk that the California consumer protection laws would be violated causing Plaintiff or others like him to be harmed by the policy and adverse and derogatory information would be reported regarding Plaintiff's credit worthiness.

**CALIFORNIA *CIVIL CODE* §1785.16(b):**

172.     At one or more times after notice of dispute Trans Union breached its California Civil Code §1785.16(b) duty to consider all information submitted by the consumer, including but not limited to:

> (a)   By failing to consider the clear and unequivocal information that Plaintiff's son's credit history was mixed with Plaintiff's credit history;
>
> (b)  By failing to consider Trans Union's own credit data that up to January 2012 Plaintiff has excellent credit with no derogatory trade lines ever being reported.

173.     At one or more times after notice of dispute Trans Union breached its California Civil Code §1785.16(b) duty to promptly add, correct or delete the disputed information from the consumer's file if it can no longer be verified by the evidence submitted.

**CALIFORNIA *CIVIL CODE* §1785.16(d):**

174.     Trans Union breached its duty to report the results of its investigation to Plaintiff when it did not respond to Plaintiff's April 19, 2013 letter disputing the American Express account, #3499, and the Discover account, #6011.

175.     Trans Union is liable to Plaintiff for the actual damages he has sustained by reason of such negligent conduct in violation of California Civil Code §1785.16 in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to California *Civil Code* §1785.31(a)(1).

176.     Trans Union willfully failed to adopt and/or follow reasonable procedures to insure the proper reinvestigation, accuracy, deletion and/or permanent suppression of inaccurate information appearing in the plaintiff's consumer reports as contained in its files pertaining to Plaintiff's credit reports supplied to third parties.

177.     At one or more times after notice of dispute Trans Union willfully breached its California Civil Code §1785.16(a) duty to conduct a reasonable dispute reinvestigation.

178.     At one or more times after notice of dispute Trans Union willfully breached its California Civil Code §1785.16(b) duty to consider all information submitted by the consumer.

179.     At one or more times after notice of dispute Trans Union willfully breached its California Civil Code §1785.16(b) duty to delete information that could not be verified.

180.     At one or more times after notice of dispute Trans Union willfully breached its California Civil Code §1785.16(d) to report the results of its investigation to Plaintiff when it did not respond to Plaintiff's April 19, 2013 letter disputing the American Express account, #3499, and the Discover account, #6011.

181.     As a direct and proximate result of such conduct, Plaintiff suffered actual damages as set forth herein.

182.     Trans Union's acts alleged herein in violation of California Civil Code §1785.16 were willful and malicious and were done with fraud or oppression, and in reckless disregard of Plaintiff's rights and were intended to or were known likely to oppress and cause injury to Plaintiff and were done within the course and scope of the Trans Union's employees' employment and/or

managerial authority or pursuant to company policy.  Plaintiff is therefore entitled to an award of punitive damages pursuant to California Civil Code §1785.31(a).

183.    Trans Union is liable to the Plaintiff for the actual damages he has sustained by reason of such willful conduct, in an amount to be determined by the trier of fact, together with punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees pursuant to California *Civil Code* §1785.31(a)(2).

184.    Pursuant to California Civil Code §1785.31(b) Plaintiff is entitled to injunctive relief against Trans Union.

185.    The unlawful acts of TransUnion described herein of mixing Plaintiff's credit file with those of his son and failing to investigate and remove the disputed accounts despite repeated efforts of Plaintiff to persuade TransUnion to act properly presents a continuing threat of danger to Plaintiff and cannot be remedied by damages alone in that TransUnion continues to maintain and publish the incorrect information, and without issuance of an appropriate injunctive order TransUnion will continue to do so.

186.    Plaintiff seeks an order enjoining TransUnion from engaging in the acts and practices as hereinabove alleged, and ordering that TransUnion permanently block, delete or suppress all of the account information for those accounts which do not belong to Plaintiff.

WHEREFORE Plaintiff prays for relief as set forth below.

## FIFTH CLAIM FOR RELIEF
### (Violations of California Business and Professions Code § 17200, et seq. Against Equifax)

187.    Plaintiff re-alleges and incorporates herein by reference the allegations of the preceding paragraphs as though set forth fully in this claim for relief.

188.    Beginning on an exact date unknown to Plaintiff, but at all times relevant herein Equifax has committed acts of unfair competition proscribed by Business and Professions Code §17200, et seq., including the practices alleged herein. Numerous California consumers are

customers of Equifax who have been subject to these unlawful, unfair, and fraudulent practices. Equifax committed each of the violations enumerated above against members of the general public, in addition to Plaintiff.

189.    Since the early 1990's and continuing thereafter Equifax has been systematically violating the provisions of the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq and the California Consumer Credit Agency Reporting Act, Civil Code § 1785 et seq. These violations are and were a matter of corporate policy, and constitute a consistent pattern and practice of unlawful corporate behavior.

190.    Plaintiff is informed and believes and on that basis alleges that, since four years prior to the filing of the complaint, Equifax has been and is violating the Fair Credit Reporting Act and the California Consumer Credit Agency Reporting Act, and therefore the UCL, by failing and refusing to conduct an investigation of, or to re-investigate, Plaintiff's disputed information and, instead, continued to report false, inaccurate information and attributed same to Plaintiff, as well as by reinserting previously deleted accounts.

191.    Defendant Equifax has engaged in and continues to engage in procedures derived from a corporate policy that result in repeated known breaches  of  the 1992 Agreement of Assurances Equifax executed with the Attorney General of the State of California and the 1995 consent agreement and Order issued by the Federal Trade Commission to maintain reasonable procedures to prevent mixed files, to follow reasonable procedures to assure the maximum possible accuracy of the information on a consumer's file, and procedures during reinvestigation specifically designed to resolve consumer disputes related to a mixed file.

192.    The business acts and practices of Equifax, as hereinabove alleged, constitute "unfair" business practices under Business & Professions Code § 17200 in that said acts and practices offend public policy and are substantially injurious to California consumers. Said acts and practices have no utility that outweighs their substantial harm to California consumers.

193.    The business acts and practices of Equifax, as hereinabove alleged, constitute "fraudulent" business practices under Business & Professions Code § 17200 in that said acts and practices are likely to deceive the public and affected consumers as to their legal rights and obligations, and by use of such deception, may preclude consumers from exercising legal rights to which they are entitled.

194.    The unlawful, unfair and fraudulent business acts and practices of Equifax described herein present a continuing threat to members of the general public in that Equifax is currently engaging in such acts and practices, and will persist and continue to do so unless and until an injunction is issued by this Court.

195.    Pursuant to Business & Professions Code § 17203, Plaintiff seeks an order enjoining Equifax from engaging in the acts and practices as hereinabove alleged, and ordering that Equifax permanently delete, block or suppress all of the account information for those accounts which do not belong to Plaintiff and to provide appropriate restitution; e.g. costs to consumers of disputing their accounts and/or losses resulting from reports of bad credit, to all affected California consumers.

196.    Pursuant to Business & Professions Code § 17203, Plaintiff seeks Injunctive relief requiring Equifax to comply with the FTC order and its agreement with the State of California Attorney General to implement policies and procedures to minimize the risk of mixed files, including specifically that Equifax implement procedures of "accepting and using a Consumer's Full Identifying Information  for matching and identification purposes" (1992 Agreement of Assurances page 3 paragraph B.1.) with the words "Full Identifying Information" meaning "full last and first name; middle initial; full street address; zip code; year of birth; any generational designation; and social security number" (1992 Agreement of Assurances page 2 paragraph 9.), and to ensure the proper investigation of consumer disputes concerning mixed identity arising from claimed mixed files or identity theft.

197.     Pursuant to Business & Professions Code § 17203, Plaintiff seeks Injunctive relief requiring Equifax when investigating a consumer dispute based on mixed identity arising from claimed mixed files or identity theft to implement procedures of "Accepting the Consumer's version of the disputed information and correcting or deleting the disputed item, when the Consumer submits to Equifax documentation confirming that the disputed information on the Consumer Report was inaccurate or incomplete; provided, however that Equifax may reinsert the information if it reinvestigates the dispute by contacting the source of the documentation or checking the public record and verifying that the documentation is not authentic or not dispositive of the dispute, and provides to the consumer notification of such verification and reinsertion of the information and of his or her right to file a dispute statement" (1992 Agreement of Assurances page 8 paragraph 6.a.iv.) and if the response ACDV from the information furnisher does not completely agree with the corrections requested by the consumer to:

(a)  conduct an actual independent investigation of the discrepancy rather than relying exclusively on the electronic ACDV verification received from the information furnisher;

(b)  appoint a human being of senior investigator status to personally investigate and evaluate the dispute rather than processing the dispute through automated electronic response codes;

(c)  directly contact the furnisher of the information to (a) determine whether the furnisher had conducted an actual investigation of the dispute rather than merely producing an automatic verification of the disputed information, (b) determine whether the furnisher of the information considered all of the information provided by the consumer, and (c) determine the specific reason why the furnisher of the information did not agree with the corrections requested by the consumer;

(d)  directly contact the consumer who presented the dispute to report the initial basis of the furnisher's position and gather any further information regarding the specific reason why the furnisher did not agree with the consumer's contentions,

44

(e)  contact the furnisher again to present any further information provided by the consumer;

(f)  conduct a further investigation of any additional information or contentions presented by the consumer or the information furnisher;  and

(g)  if the dispute is not resolved by agreement of the furnisher and consumer as to the propriety of correction of the information, provide a full report to the consumer of the basis for the furnisher's determination to not correct the information.

198.    Plaintiff seeks recovery of attorneys' fees, costs and expenses incurred in the filing and prosecution of this action pursuant to California Code of Civil Procedure § 1021.5 and any other applicable law.

WHEREFORE Plaintiff prays for relief as set forth below.

### SIXTH CLAIM FOR RELIEF
**(Violations of California Business and Professions Code
§ 17200, et seq. Against Trans Union)**

199.    Plaintiff re-alleges and incorporates herein by reference the allegations of the preceding paragraphs as though set forth fully in this claim for relief.

200.    Beginning on an exact date unknown to Plaintiff, but at all times relevant herein Trans Union has committed acts of unfair competition proscribed by Business and Professions Code §17200, et seq., including the practices alleged herein. Numerous California consumers are customers of Trans Union who have been subject to these unlawful, unfair, and fraudulent practices.  Trans Union committed each of the violations enumerated above against members of the general public, in addition to Plaintiff.

201.    Since the early 1990's continuing thereafter, Trans Union has been systematically violating the provisions of the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq and the California Consumer Credit Agency Reporting Act, Civil Code § 1785 et seq. These violations are

and were a matter of corporate policy, and constitute a consistent pattern and practice of unlawful corporate behavior.

202.    Plaintiff is informed and believes and on that basis alleges that, since four years prior to the filing of the complaint, Trans Union has been and is violating the Fair Credit Reporting Act and the California Consumer Credit Agency Reporting Act, and therefore the UCL, by failing and refusing to conduct an investigation of, or to re-investigate, Plaintiff's disputed information and, instead, continued to report false, inaccurate information and attributed same to Plaintiff.

203.    Defendant TransUnion has engaged in and continues to engage in procedures derived from a corporate policy that result in repeated known breaches of the 1992 Consent Order entered into between Trans Union and the Attorney General of the State of California to maintain reasonable procedures to prevent mixed files, to follow reasonable procedures to assure the maximum possible accuracy of the information on a consumer's file, and procedures during reinvestigation specifically designed to resolve consumer disputes related to a mixed file.

204.    The business acts and practices of Trans Union, as hereinabove alleged, constitute "unfair" business practices under Business & Professions Code § 17200 in that said acts and practices offend public policy and are substantially injurious to California consumers. Said acts and practices have no utility that outweighs their substantial harm to California consumers.

205.    The business acts and practices of Trans Union, as hereinabove alleged, constitute "fraudulent" business practices under Business & Professions Code § 17200 in that said acts and practices are likely to deceive the public and affected consumers as to their legal rights and obligations, and by use of such deception, may preclude consumers from exercising legal rights to which they are entitled.

206.    The unlawful, unfair and fraudulent business acts and practices of Trans Union described herein present a continuing threat to members of the general public in that Trans Union

is currently engaging in such acts and practices, and will persist and continue to do so unless and until an injunction is issued by this Court.

207.    Pursuant to Business & Professions Code § 17203, Plaintiff seeks an order enjoining Trans Union from engaging in the acts and practices as hereinabove alleged, and ordering that Trans Union to permanently delete, block or suppress all of the account information for those accounts which do not belong to Plaintiff and to provide appropriate restitution; e.g. costs to consumers of disputing their accounts and/or losses resulting from reports of bad credit, to all affected California consumers.

208.    Pursuant to Business & Professions Code § 17203, Plaintiff seeks Injunctive relief requiring TransUnion to comply with its Consent Order with the State of California Attorney General to implement policies and procedures to minimize the risk of mixed files, including specifically that Trans Union implement procedures of accepting and using a Consumer's Full Identifying Information including full last and first name, middle initial, full street address, zip code, year of birth, any generational designation; and social security numbers for matching and identification purposes, and to ensure the proper investigation of consumer disputes concerning mixed identity arising from claimed mixed files or identity theft.

209.    Pursuant to Business & Professions Code § 17203, Plaintiff seeks Injunctive relief requiring TransUnion when investigating a consumer dispute based on mixed identity arising from claimed mixed files or identity theft if the response ACDV from the information furnisher does not completely agree with the corrections requested by the consumer to:

(a)  conduct an actual independent investigation of the discrepancy rather than relying exclusively on the electronic ACDV verification received from the information furnisher;

(b)  appoint a human being of senior investigator status who is experienced in handling such disputes to personally investigate and evaluate the dispute rather than processing the dispute through automated electronic response codes, and such investigator shall "1) pull all files which

may be involved in the dispute; 2) fully verify disputed tradelines to determine whether the tradeline is owned by the Consumer in whose file it resides; 3) make any changes, deletions, or additions to correct the Consumer's file and resolve the dispute" (1992 Consent Order paragraph 14.a.v.);

(c)  directly contact the furnisher of the information to (a) determine whether the furnisher had conducted an actual investigation of the dispute rather than merely producing an automatic verification of the disputed information, (b) determine whether the furnisher of the information considered all of the information provided by the consumer, and (c) determine the specific reason why the furnisher of the information did not agree with the corrections requested by the consumer;

(d)  directly contact the consumer who presented the dispute to report the initial basis of the furnisher's position and gather any further information regarding the specific reason why the furnisher did not agree with the consumer's contentions,

(e)  contact the furnisher again to present any further information provided by the consumer;

(f)  conduct a further investigation of any additional information or contentions presented by the consumer or the information furnisher;  and

(g)  if the dispute is not resolved by agreement of the furnisher and consumer as to the propriety of correction of the information, provide a full report to the consumer of the basis for the furnisher's determination to not correct the information.

210.    Plaintiff seeks recovery of attorneys' fees, costs and expenses incurred in the filing and prosecution of this action pursuant to California Code of Civil Procedure § 1021.5 and any other applicable law.

WHEREFORE Plaintiff prays for relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court grant the following relief against each Defendant:

1.     Actual damages or statutory nominal damages to be determined by the jury

2.     Punitive damages to be determined by the jury;

3.     Injunctive relief including as set forth above;

4.     Attorneys' fees;

5.     Costs and expenses incurred in the action; and

6.     Such other and further relief as the Court may deem just and proper.

### **TRIAL BY JURY IS DEMANDED.**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: 7-15-13                                    LAW OFFICE OF LINDA DEOS

s/Linda Deos
LINDA DEOS
Attorney for Plaintiff, Robert Anthony

LAW OFFICE OF JOHN B. KEATING

s/John B. Keating
JOHN B. KEATING
Attorney for Plaintiff, Robert Anthony