UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT JAMES ANTHONY,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>Defendant. | No. 2:13-cv-01424-TLN-CKD<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT EQUIFAX INFORMATION SERVICES, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

This matter is before the Court on Defendant Equifax Information Services, LLC's ("Equifax") Motion for Partial Summary Judgment. (ECF No. 110.) Plaintiff Robert James Anthony ("Plaintiff") opposes the motion. (ECF No. 112.) Having reviewed the briefing submitted by the parties and for the reasons set forth below, the Court hereby GRANTS IN PART AND DENIES IN PART Equifax's Motion for Partial Summary Judgment (ECF No. 110).[1]

///

///

---

[1] Plaintiff filed a declaration of Evan Hendricks in connection with his opposition to Equifax's motion for partial summary judgment. (ECF No. 59.) Equifax moved to strike the declaration on the grounds the declaration was expert opinion not included in the expert report. (ECF No. 120.) The Court will not consider the declaration in this Order so the Court need not address Equifax's motion to strike. Accordingly, Equifax's motion to strike (ECF No. 120) is denied as moot. The parties may renew any objections to expert testimony before trial begins during motions *in limine*.

1

## I. UNDISPUTED FACTS[2]

Plaintiff is a 79-year-old retiree who has lived in South Lake Tahoe since 1969. (Pl.'s Compl., ECF No. 1 ¶ 10; Equifax's Statement of Undisputed Facts, ECF No. 111-1 ¶¶ 1–2.) Plaintiff has a son named Robert John Anthony. (ECF No. 111-1 ¶ 3.) Plaintiff and his son do not have similar social security numbers, addresses, or birthdates. (ECF No. 111-1 ¶ 12.) Instead, Plaintiff's son resides at 8535 Parkwood Way, Roseville, California, and previously resided at 8138 Big Sky Drive, Antelope, California. (ECF No. 111-1 ¶¶ 3–4.)

Equifax is a consumer reporting agency within the meaning of the Federal Consumer Reporting Act ("FCRA"). (ECF No. 111-1 ¶ 9.) Equifax receives information from creditors, public records, merchants, and other sources and assembles that information into consumer credit reports. (ECF No. 111-1 ¶ 10.) Equifax provides the reports to subscribers who have a permissible purpose for obtaining those reports. (ECF No. 111-1 ¶ 10.)

On October 19, 2012, Equifax received its first letter from Plaintiff disputing 13 accounts and four addresses on his credit file. (ECF No. 111-1 ¶ 90.) This communication did not include a discussion of possible identity theft or explicitly mention fraud. (ECF No. 111-1 ¶ 90; ECF No. 85[3] at 2–6.) On November 2, 2012, Equifax sent Plaintiff the results of the investigation and a summary of his rights under the FCRA. (ECF No. 111-1 ¶ 92.) Per the results of the investigation sent to Plaintiff, Equifax removed the four disputed addresses from Plaintiff's credit file and removed eight accounts from the file. (ECF No. 111-1 ¶ 91; ECF No. 85 at 17–18.)

Equifax received another letter from Plaintiff dated December 19, 2012, disputing two of the same accounts on his credit file. (ECF No. 111-1 ¶ 93; ECF No. 84 at 46.) On January 9,

---

[2] Plaintiff filed responses and objections (ECF No. 115) to Defendant's Statement of Undisputed Facts. However, most of Plaintiff's responses and objections lack evidentiary support or legal precedent contradicting the facts. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1)(A)–(B). Plaintiff failed to cite particular parts of materials or the record or show the material presented does not establish the presence of a genuine dispute as to most of Defendant's statement of undisputed facts. For this reason, "the court may . . . consider the fact [identified by the movant] undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2)–(3); *see also* Pretrial Scheduling Order, ECF No. 16 at 5:1–4.

[3] Electronic Court Filing documents 84 and 85 were filed under seal due to the documents' confidential nature. The Court will not divulge specific information from the documents, but has reviewed them thoroughly to determine whether facts are in dispute.

2013, Equifax sent Plaintiff the results of the investigation — which confirmed the accounts belonged to Plaintiff — and a summary of his rights under the FCRA. (ECF No. 111-1 ¶¶ 94–95; ECF No. 85 at 24.) On April 22, 2013, Equifax received another letter from Plaintiff disputing eight accounts on his credit file. (ECF No. 111-1 ¶ 96.) Equifax verified one account, removed three of the accounts, and four of the accounts were not reported on the file at the time of the dispute letter. (ECF No. 111-1 ¶ 97.) Equifax also updated Plaintiff's employment information status to retired. (ECF No. 85 at 32.) Equifax sent Plaintiff the results of the investigation on May 21, 2013. (ECF No. 111-1 ¶ 98.)

Finally, on August 20, 2014, Equifax received a letter from Plaintiff, which stated for the first time that Plaintiff was a victim of identity theft and requested Equifax remove a U.S. Bank account from his credit report. (ECF No. 111-1 ¶ 101; ECF No. 114-2 at 5.) Plaintiff also attached a copy of a police report purporting to demonstrate that Plaintiff was a victim of identity theft. (ECF No. 111-1 ¶ 101; ECF No. 114-2 at 5.) Equifax removed the U.S. Bank account on August 25, 2014. (ECF No. 111-1 ¶ 101.) On December 3, 2014, Plaintiff sent a second letter informing Equifax he was a victim of identity theft and identifying 11 accounts associated with his credit report he believed were not his. (ECF No. 114-2 at 6.) Plaintiff initiated this suit on July 16, 2013.

## II. STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at

324 (internal quotation marks omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v.*

*Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

**III.    ANALYSIS**

A. <u>Reasonable Procedures Claims</u>

Defendant seeks summary judgment for Plaintiff's first cause of action insofar as it alleges a violation of 15 U.S.C. § 1681e(b) and Plaintiff's third cause of action insofar as it alleges a violation of California Civil Code 1785.14(b).[4] Under § 1681e(b), a credit reporting agency is required to "follow reasonable procedures to assure maximum possible accuracy" of information contained in a consumer credit report. "A credit reporting agency does not violate § 1681e(b) . . . simply by reporting information that may be inaccurate." *Grigoryan v. Experian Information Solutions, Inc.*, 84 F. Supp. 3d 1044, 1067 (C.D. Cal. 2014) (internal quotation marks omitted). "Liability under § 1681e(b) is predicated on the reasonableness of the [CRA's] procedures in obtaining credit information." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). "If a consumer reporting agency accurately transcribes, stores and communicates consumer information received from a source that it reasonably believes to be reputable, and which is credible on its face, the agency does not violate [§ 1681e(b)] simply by reporting an item that turns out to be inaccurate." *Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1081 (D. Or. 2007) (quoting 16 C.F.R. 600, § 607.3(A)). The focus is on whether Equifax's procedures for preparing credit files contained reasonable procedures to prevent inaccuracies. *Guimond*, 45 F.3d at 1334.

It is undisputed that Equifax produced inaccurate credit reports between September 18, 2012 and May 2013. (ECF No. 1 ¶ 65.) Thus, Plaintiff has demonstrated a prima facie case

---

[4] Courts analyze § 1681e(b) claims and § 1785.14(b) claims the same under federal and state law. *See Grigoryan v. Experian Information Solutions, Inc.*, 84 F. Supp. 3d 1044, 1068 (C.D. Cal. 2014). Accordingly, the Court's analysis under § 1681e(b) similarly applies to § 1785.14(b) and results in the same outcome for Plaintiff's third cause of action.

5

under § 1681e(b). *Ottiano v. Credit Data Southwest*, Inc., 54 Fed. App'x. 640, 640 (9th Cir. 2003) (citing *Guimond*, 45 F.3d at 1333). "However, a prima facie case does not in and of itself create a jury question." *Avetisyan v. Equifax Information Services, LLC*, 2015 WL 12656951, at * 6 (C.D. Cal. Mar. 25, 2012) (citing *Saenz*, 621 F. Supp. 2d at 1080). Plaintiff must still show the defendant's actions were unreasonable. *Id.* In an "overwhelming majority of cases" the issue of reasonableness will be a jury question. *Guimond*, 45 F.3d at 1333.

Plaintiff asserts Equifax's actions were unreasonable in six ways: (1) Equifax relied on the Automated Consumer Dispute Verification ("ACDV") Process; (2) Equifax allows for incomplete matching of personal identifiers; (3) Equifax combined two credit files despite internal "DO NOT COMBINE" codes; (4) Equifax fails to block false actions after a fraud determination; (5) Equifax secretly suppresses false accounts without notice; and (6) Equifax failed to respond to a § 1681c-2(a) Notice to Delete files. (ECF No. 112 at 9–17.) For reasons that will become apparent upon review, the Court will first discuss Equifax's reliance on the ACDV process, then failure to respond to a § 1681c-2(a) Notice to Delete files, and finally discuss the remaining claims together.

### i. *Equifax's Reliance on the ACDV Process*

An ACDV is a form electronically transmitted from a credit reporter to data furnishers. (ECF No. 111-1 ¶ 43.) The ACDV process is an industry standard used by all three of the nationwide consumer reporting agencies. (ECF No. 111-1 ¶ 44.) When a data furnisher receives an ACDV from Equifax, it is required by its contract with Equifax and by the FCRA, to conduct its own investigation and to report the results to Equifax. (ECF No. 111-1 ¶ 47.) If the data furnisher verifies the account, Equifax makes no changes. (ECF No. 111-1 ¶ 49.) However, if the data furnisher advises Equifax to delete or otherwise update the account, Equifax takes the necessary steps. (ECF No. 111-1 ¶ 48.)

Equifax asserts the ACDV is the standardized, industry-wide method and is not per se unreasonable. (ECF No. 111 at 14–15.) Plaintiff contends the ACDV process is unreasonable because Equifax cannot reasonably rely on the information from furnishers when, as here, the information received is inconsistent with Equifax's own records. (ECF No. 112 at 9.) Plaintiff

further argues the ACDV process allowed for inconsistent results because each time Equifax received a letter from Plaintiff, it only removed some of Plaintiff's disputed accounts rather than all contested accounts. (ECF No. 112 at 10.) Plaintiff avers the ability to change addresses without notification to the consumer is also unreasonable. (ECF No. 112 at 10–11.) Finally, Plaintiff asserts the ACDV process allowed for two Bank of America accounts to be reinserted onto Plaintiff's credit report after having previously been removed. (ECF No. 112 at 11.)

Plaintiff's arguments demonstrate a basic misconception of a § 1681e(b) violation as compared to a § 1681i violation. The ACDV process is used in investigating allegations of inaccurate information. On the other hand, Section 1681e(b) pertains to the "maintenance and operation of a Credit Reporting Agency's ("CRA") own internal databases rather than to investigation of the accuracy of information received from external sources." *Grigoryan*, 84 F. Supp. 3d at 1068 (internal quotation marks omitted). Therefore, the ACDV process cannot form the basis of a violation under § 1681e(b), but instead is addressed under § 1681i. Accordingly, Plaintiff's argument is unavailing and the motion for summary judgment is granted insofar as it asserts a § 1681e(b) violation based on the ACDV process.

*ii. Failure to respond to a § 1681c-2(a) Notice to Delete files*

Plaintiff asserts it is pro se unreasonable for Equifax to fail to respond to a §1681c-2(a) notice to permanently block files. (ECF No. 112 at 16–17.) Plaintiff contends that pursuant to 15 U.S.C. § 1681c-2(a) Equifax was required to state that it had blocked the allegedly fraudulent accounts as a result of the notice. (ECF No. 112 at 16–17.) Plaintiff alleges Equifax did not respond to the block request, but merely sent a new credit report ten days later. (ECF No. 112 at 17.) Equifax asserts it did in fact block the account and sent Plaintiff the results of the investigation. (ECF No. 116 at 5.) In support of this statement, Equifax cites to the Supplemental Declaration of Pamela Smith. (ECF No. 111-1 ¶ 101; ECF No. 60-1, Ex. A.)

The supplemental declaration states only that "Equifax *removed* the U.S. Bank account from Plaintiff's credit file and on August 25, 2014, sent him the results of the investigation of his dispute." (ECF No. 60-1 ¶ 6 (emphasis added).) The declaration does not include any indication that Equifax *blocked* the U.S. Bank account or exactly what information was relayed to Plaintiff.

7

Nor does Equifax point to any place in the record that the Court could review the letter and its contents for itself. Without more, the Court cannot say that matter is undisputed. Instead it is safe to say, Plaintiff explicitly disputes that the U.S. Bank account was blocked or that Plaintiff was informed that the account was blocked. Where a material fact is disputed, the Court cannot grant summary judgment and does not do so here on the reasonableness of failing to respond to the §1681c-2(a) notice to delete files.

*iii. Remaining Arguments*

Plaintiff asserts Equifax's failure to require complete matching of personal identifying information, act of combining of two credit files despite internal "DO NOT COMBINE" codes, failure to block false actions after a fraud determination, and secret suppression of false accounts without notice are unreasonable procedures. (ECF No. 112 at 13–16.) Equifax argues the fault is not with its system, but with Plaintiff's son's alleged identity theft. (ECF No. 116 at 4.) Equifax contends the combination of files is not unreasonable and it did not have to notify Plaintiff of the combination. (ECF No. 111 at 15–16.) Finally, Equifax asserts at the time the false accounts remained on Plaintiff's credit score, he had not yet notified Equifax of potential fraud or identity theft. (ECF No. 111 at 16.) The reasonableness of the procedures all stem from a common question: whether the continued reliance on the furnishers was reasonable in light of Plaintiff's disputes. Thus, the Court addresses all of these arguments together.

Before addressing the parties' arguments, the Court will first set forth the procedures Equifax uses as described in its statement of undisputed facts. Equifax receives information from sources referred to as furnishers, i.e. creditors, public records, and merchants, which it provides to subscribers who have a permissible purpose for obtaining those records. (ECF No. 111-1 ¶ 26.) Equifax stores the information received from furnishers in its consumer database and assembles the information into consumer credit files. (ECF No. 111-1 ¶ 27.) After receiving data from a furnisher, Equifax conducts a series of computerized quality checks before adding the data to its consumer database. (ECF No. 111-1 ¶ 29.) The quality check is designed to determine whether the information is properly formatted and whether the information deviates from an expected norm based on past experience with that particular furnisher. (ECF No. 111-1 ¶ 30.) For

8

example, if a furnisher normally represents that 10% of its accounts are past due, but the data indicates that 20% of the accounts are past due, Equifax will conduct further checks to determine the data's reliability, which may include returning the information to the furnisher for review. (ECF No. 111-1 ¶ 31.)

As the Court noted above, in an "overwhelming majority of cases" the issue of reasonableness will be a jury question. *Guimond*, 45 F.3d at 1333. Despite Equifax's statement of undisputed facts, Equifax has not provided sufficient evidence of its procedures to demonstrate this case is not in the majority. The evidence Equifax provided demonstrates it relies heavily on the furnisher's reliability with the caveat that Equifax checks whether the information conforms to furnishers' past norms. (ECF No. 111-1 ¶ 30.) Ordinarily, Equifax is entitled to rely upon a furnisher "it reasonably believes to be reputable, and which is credible on its face." *Saenz*, 651 F. Supp. 2d at 1081. However,

> [W]hen a consumer reporting agency learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise) it must review its procedures for assuring accuracy. Examples of errors that would require such review are the issuance of a consumer report pertaining entirely to a consumer other than the one on whom a report was requested, and the issuance of a consumer report containing information on two or more consumers (e.g., information that was mixed in the file) in response to a request for a report on only one of those consumers.

*Id.* (emphasis omitted). It is undisputed that Plaintiff sent four letters to Equifax detailing the inaccuracies in his account. (ECF No. 111-1 ¶¶ 90, 93, 96 & 101.) The second letter Plaintiff sent on December 15, 2012, explained Plaintiff "believe[d] [Equifax] may be mixing up [Plaintiff's] credit history and personal information with that of [his] son." (ECF No. 84 at 46.) Thus, Plaintiff placed Equifax on notice of potential inaccuracies and a possible cause of the inaccuracies within its record keeping. However, Equifax does not demonstrate that it reviewed how it maintained its internal databases, but rather continued to rely on information provided from furnishers without much question even after removing some disputed accounts and receiving additional notices from Plaintiff. (*See* ECF No. 111-1 ¶¶ 47–49.) Equifax contends the

inaccuracies were a result of Plaintiff's son's identity theft. (ECF No. 116 at 4.) However, Plaintiff disputes that his son stole his identity. Given Plaintiff's notice of potential errors in the file, the reasonableness of Equifax's continued reliance on the furnishers is a factual question best left to a jury. For these reasons, summary judgement is granted only insofar as Plaintiff asserts use of the ACDV system is unreasonable. In all other aspects, Equifax's motion for summary judgement as to § 1681e(b) and § 1785.14(b) is denied.

### B. Recovery of Damages

Equifax moves for summary judgment to limit the amount of recoverable damages to those following Plaintiff's initial dispute. (ECF No. 111 at 17.) Explicitly stated in Equifax's argument is the supposition that the Court granted Equifax's motion as to § 1681e(b). (ECF No. 111 at 17 ("Plaintiff cannot prove a violation of FCRA § 1681e(b) . . . [t]he only remaining allegations relate to Equifax's reinvestigations of Plaintiff's disputes . . . alleged damages predating Plaintiff's first dispute . . . could not have been caused by the allegedly deficient reinvestigations.").) As discussed above, the Court found a triable issue of fact exists as to the § 1681e(b) violation such that the matter shall go to the jury. Equifax does not explain whether the damages it seeks to limit could be recovered under § 1681e(b), and it is not within the purview of the Court to read such an argument into Equifax's motion. Accordingly, Equifax's motion for summary judgment is denied as to Equifax's argument to limit damages alleged prior to the first dispute.

### C. Statute of Limitations

Equifax moves for summary judgment arguing "any alleged FCRA violations Plaintiff discovered or should have discovered" prior to the two-year statute of limitation are barred. (ECF No. 111 at 19.) Equifax contends any alleged credit denials/adverse actions fall outside the limitations period. (ECF No. 111 at 19.) Plaintiff asserts any violations made prior to the two-year period are not barred absent actual discovery of the facts of the violation. (ECF No. 112 at 18.) Plaintiff argues all claims are unquestionably timely because there was no actual discovery. (ECF No. 112 at 18.) Equifax limits its statute of limitations argument to two adverse actions: (1) a credit card cancellation on April 13, 2010; and (2) a credit limit reduction on June 4, 2011.

(ECF No. 111 at 20.) Because Equifax limits its argument, the Court will only focus on the two adverse actions Equifax raises.

The statute of limitations to bring a claim for a FCRA violation is "2 years after the date of discovery [or constructive discovery] by the plaintiff of the violation that is the basis for such liability; or 5 years after the date on which the violation that is the basis of such liability occurs." 15 U.S.C. § 1681p. The term discovery has been interpreted to include "not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff would have known." *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 648 (2010). Similarly, § 1785.14(b) requires actions be brought "within two years from the date the plaintiff knew of, or should have known of, the violation . . . but not more than seven years from the earliest date on which liability could have arisen." Cal. Civ. Code § 1785.33. "In raising the statute of limitations as a defense, the burden is on [Equifax] to show that no material issues of fact exist as to whether Plaintiff knew or had reason to know of [Equifax's] alleged FCRA violations more than two years before he filed his Complaint on [July 17, 2013]." *Kovalerchik v. Experian Information Solutions, Inc.*, 2014 WL 11412673, at * 2 (C.D. Cal. July 17, 2014) (citing *Drew v. Equifax Information Services, LLC*, 690 F.3d 1100, 1110 (9th Cir. 2012)).

As an initial matter, Equifax does not specifically assert in its motion that the statute of limitations bars Plaintiff's § 1681i claim. Equifax's motion asserts "any alleged FCRA violations" must have been filed prior to the two-year statute of limitations. (ECF No. 111 at 19.) The Court notes, however, that the case law discussion only references the credit report and how Plaintiff should have been aware that the adverse actions were "caused by allegedly inaccurate information." (ECF No. 111 at 20:25–26.) Thus, the Court believes Equifax only seeks a ruling on the statute of limitations as applied to § 1681e(b) violations. The discussion of § 1681i is no more developed in Equifax's reply brief. Accordingly, if Equifax sought a ruling on the statute of limitations as to any other FCRA violations — including § 1681i — Equifax has not met its burden to demonstrate no material issue of fact exists because it has failed to present on the face of its motion a clear argument that the statute of limitations bars § 1681i.[5] The Court thus turns to

---

[5] "There is no burden upon the district court to distill every potential argument that could be made based upon

11

the merits of Equifax's statute of limitations argument as to § 1681e(b).

It is undisputed that Plaintiff filed the instant lawsuit on July 17, 2013. (ECF No. 1.) Assuming, without deciding, that the two-year statute of limitation period applies, Plaintiff would be barred from bringing claims of violations that occurred before July 16, 2011. Equifax contends the undisputed facts show Plaintiff was aware of the issues with his Equifax credit file as early as April 2010. (ECF No. 111 at 20.) Plaintiff does not dispute that on April 13, 2010, Citibank sent Plaintiff a letter advising him that it was closing his credit card account. (ECF No. 111-1 ¶ 105.) The letter stated that Citibank's decision was based in whole or in part on information it obtained from Equifax. (ECF No. 111-1 ¶ 106.) Based on these undisputed facts, Equifax asserts "Plaintiff knew, or should have known, that the denials were caused by inaccurate information." (ECF No. 111 at 20.) Equifax infers that Plaintiff should have known Equifax violated the FCRA based on the mere closing of his credit card account and a statement that the decision was based partly on information supplied by Equifax. This inference is unreasoned.

Equifax fails to present sufficient evidence that would tie Citibank's letter to Plaintiff's discovery of the precise violation alleged in its lawsuit. First, Equifax does not explain what information, if any, was provided to Citibank. Second, Equifax presents no evidence that Plaintiff knew or should have known that a bad credit report was provided to Citibank. The inference that a bad credit report is the cause of a closed credit card account is only one explanation of many for why a credit card account may be closed. *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1087 (9th Cir. 2000) (determining summary judgement is improper unless the *only* reasonable inference that can be drawn is that Plaintiffs knew or should have known more than one year before filing their claims). Equifax does not present any evidence demonstrating the only reasonable inference for Citibank's letter is that an inaccurate report was the reason for the closure, let alone that Plaintiff knew or should have known the inaccurate information caused the closure. "The Court simply finds that Equifax has not carried its burden

---

the materials before it on summary judgment." *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Likewise, there is no "duty on the part of the judge" to research and refine "perfunctory and undeveloped arguments" any time a party's attorney has in the slightest way adverted to such arguments in its submissions. *Williams v. Eastside Lumberyard & Supply Co., Inc.*, 190 F. Supp. 2d 1104, 1114 (S.D. Ill. 2001).

showing that Plaintiff discovered a violation of the FCRA before" July 16, 2011. *Andrews v. Equifax Information Services LLC*, 700 F. Supp. 2d 1276, 1279 (W.D. Wash. 2010).

The Court need not address Plaintiff's assertions in opposition as to *Drew v. Equifax Information Services, LLC*, as Equifax fails to meet its initial burden. For the stated reasons, the Court hereby denies Equifax's motion for summary judgment as to its statute of limitations argument.

### D. Willful Violations of the FCRA

Equifax contends Plaintiff cannot establish that it willfully violated the FCRA. (ECF No. 111 at 21.) The FCRA permits statutory and punitive damages when a consumer reporting agency "willfully fails to comply with any requirement imposed [by the FCRA] with respect to any consumer." 15 U.S.C. § 1681n(a)(2). Willful violations of the FCRA encompass knowing or reckless disregard of the FCRA. *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 71 (2007). In *Safeco*, "the Supreme Court elaborated that recklessness is 'conduct violating an objective standard: action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Shannon v. Equifax Information Services, LLC*, 764 F. Supp. 2d 714, 725 (E.D. Pa. 2011) (quoting *Safeco*, 551 U.S. at 68).

As an initial matter, Equifax's only argument in support of summary judgement as to a willfulness claim for § 1681e(b) is that based on previously raised arguments, "it follows *a fortiori* that [Plaintiff] cannot show willfulness." (ECF No. 111 at 21.) Equifax asserts courts have frequently upheld the same industry-wide procedures Plaintiff alleges are unreasonable. (ECF No. 111 at 22.) Equifax also contends Plaintiff's expert has "done nothing to tie the alleged [systemic issues] with the facts of this case." (ECF No. 111 at 21–22.) Equifax spends the rest of its argument discussing willfulness in connection with § 1681i. Plaintiff on the other hand only discusses willfulness as to § 1681e(b). As to Equifax's argument regarding § 1681e(b), the Court ruled above that questions of fact remain as to § 1681e(b). Equifax's two-sentence discussion of willfulness as to § 1681e(b) does not attempt to tie its discussion of reasonableness with the standard for willfulness. Thus, summary judgment as to willfulness for § 1681e(b) does not follow *a fortiori*. Equifax failed to meet its burden to establish no triable issue of fact remains as

to Plaintiff's § 1691e(b) willfulness claim.  For these reasons, Equifax's motion for summary judgment on a willful claim for violation of § 1681e(b) is denied.

Equifax singles out the ACDV process in its arguments.  Essentially, Equifax asserts the ACDV is reasonable as a matter of law.  (ECF No. 111 at 22.)  Accordingly, Equifax contends the ACDV process cannot be the basis of a willfulness claim.  (ECF No. 111 at 22.)  Plaintiff does not discuss the ACDV process in his opposition, but states that "each of the six instances discussed previously present material fact questions of Equifax's reckless conduct that only a jury can decide."  (ECF No. 112 at 24.)  As the Court noted above, the ACDV process was one of six instances in which Plaintiff alleged fault and unreasonable conduct.  *See supra* Section III.A.i.  As the Court also noted above, Plaintiff's discussion of the ACDV process with respect to § 1681e(b) was misplaced because the ACDV process relates to reinvestigations, not the accuracy of credit reports.  Consequently, the ACDV process similarly cannot form the basis for willfulness as to § 1681e(b).

However, insofar as Plaintiff asserts the ACDV process is a basis for liability under § 1681i, the Court analyzes that separately.  Equifax asserts ACDV is reasonable as a matter of law and courts have rejected willfulness claims based on the process.  (ECF No. 111 at 22.)  In support of this argument, Equifax cites a single, out-of-circuit case, *Shannon v. Equifax Information Services, LLC*, 764 F. Supp. 714 (E.D. Pa. 2011).  (ECF No. 111 at 12.)  In so doing, Equifax ignores the multiple district courts within the Ninth Circuit who conclude that whether a CRA's reliance on the ACDV process is a knowing or reckless disregard for its duty is a factual issue for a jury to decide.  *See Mamisay v. Experian Information Solutions Inc.*, 2017 WL 3387476, at *6 (N.D. Cal. Aug. 2, 2017) (collecting cases).  Additionally, as the court in *Mamisay* points out, *Shannon* "did not squarely address whether the CRA's reliance on an ACDV only, in the face of plaintiff's evidence that the CRA had notice of an actual inaccuracy, would support a finding of willfulness."  *Id.* at *6 n.8.  Like *Mamisay*, Plaintiff notified Equifax of the inaccuracies in his credit reports but Equifax continued to rely on its ACDV process.  Thus, the Court is similarly unpersuaded by *Shannon* and instead joins its sister courts in the Ninth Circuit, finding that an issue of material fact exists as to whether Equifax's reliance on the ACDV process

14

was knowing or reckless. Equifax's motion for summary judgment is denied as to a willful violation based on the ACDV process.

As to § 1681i, Equifax asserts that based on the facts a jury could at most find that "Equifax's consumer–services representatives made inadvertent mistakes in the process." (ECF No. 111 at 22.) Equifax contends there can be no willfulness here because the misinformation on Plaintiff's credit file resulted from his son's identity theft and Equifax removed almost all of the disputed information. (ECF No. 111 at 22.) To support this argument, Equifax cites multiple cases. However, Equifax stretches the propositions of those cases. For example, Equifax cites *Robinson v. Equifax Information Services LLC*, 560 F.3d 235, 241 n.3 (4th Cir. 2009) for the proposition that "evidence of willfulness was 'wholly lacking' in an FCRA identity-theft case where the CRA had made several errors in its handling of the plaintiff's disputes over a period of several years." (ECF No. 111 at 22–23.) It is factually true that the plaintiff in *Robinson* was a victim of identity theft and Equifax committed multiple errors over several years. However, Equifax's characterization implies that identity theft was the reason for the court's holding that a lack of evidence of willfulness existed. In fact, when one reads the Fourth Circuit's analysis of willfulness, the court does not mention identity theft or errors in handling the disputes. The Fourth Circuit upheld the district court's ruling by merely saying, "evidence that Equifax acted willfully is wholly lacking." *Robinson*, 560 F.3d at 241 n.3. Without guidance on how the Fourth Circuit reached such a conclusion, the Court will not infer that identity theft was the reason for the Fourth Circuit's holding. The remainder of the cases Equifax cites fare no better.

However, the main problem with Equifax's argument is Equifax's lack of factual evidence. Equifax contends that the issues involved in the reinvestigation of Plaintiff's credit reports can be attributed to simple human error. (ECF No. 111 at 24.) Equifax states "[t]he most that can be said in this case is that an Equifax representative committed a human error in removing all but two of the fraudulent accounts from Plaintiff's credit file." (ECF No. 111 at 24.) However, Equifax does not cite any facts or evidence in the record showing that simple human error occurred or even what that error might be. Equifax makes the same argument two pages earlier and cites to a section in its statement of undisputed facts which discusses the procedure for

investigations. (ECF No. 111 at 22.) Upon examination of the procedures set out in Equifax's statement of undisputed facts, the Court notes that the procedures do not explain where human error might occur in the process and how it could have occurred in this case. (*See* ECF No. 111-1 ¶¶ 32–50.) Equifax explains that once it receives information from a data furnisher, Equifax takes necessary action and notifies the consumer, but in the case where an account is verified, no action is taken. (Decl. of Pamela Smith, ECF No. 51-2 ¶ 31.) The Pamela Smith Declaration does not provide any additional explanation or offer insight into how human error potentially arises. The Court could assume that when an action is taken it involves a customer service representative, but such an assumption would run afoul of the requirement that a movant for summary judgment either present evidence or demonstrate the non-movant cannot present evidence. Without an explanation as to how Equifax's consumer service representatives are a part of the ACDV process or where human error could have occurred, there is no evidence demonstrating the issue is a matter of human error rather than willfulness.

For these reasons, Equifax's motion for summary judgment on the issue of willfulness is denied.

### IV. CONCLUSION

For the reasons stated above, the Court finds as follows:

1. Equifax's Motion for Summary Judgment is hereby GRANTED in so far as Plaintiff asserts a claim under §1681e(b) based on the ACDV system;
2. In all other respects, Equifax's Motion for Summary Judgment is hereby DENIED; and
3. Equifax's Motion to Strike is DENIED as MOOT.

IT IS SO ORDERED.

Dated: May 18, 2018

Troy L. Nunley
United States District Judge

16